[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAY 10, 2002
THOMAS K. KAHN
CLERK

_____

No. 01-13607

_____

D. C. Docket No. 00-00180-CR-E

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ROBERT DALE HOLLOWAY,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Alabama

_____

(May 10, 2002)

Before BLACK and HULL, Circuit Judges, and HANCOCK*, District Judge.

BLACK, Circuit Judge:

---

*Honorable James H. Hancock, U. S. District Judge for the Northern District of Alabama, sitting by designation.

This case arises from a 911 call reporting gunshots and arguing originating from Appellant Robert Dale Holloway's residence.  Investigating the emergency call, law enforcement officers conducted a warrantless search of the residence.  Although no victims were found by the officers, the search uncovered the firearm used to cause the disturbance.  Appellant subsequently was indicted and convicted for unlawful possession of a firearm by a felon.  On appeal, he argues the firearm and other evidence seized by the officers should have been suppressed as fruits of an unconstitutional search.  Upon review of the record, we conclude the district court did not err in denying Appellant's motion to suppress and affirm.

## I.  BACKGROUND

At 10:22 p.m. on August 4, 1999, Officer Norman Bernard of the Alexander City Police Department received a dispatch from a 911 operator to investigate a report of gunshots and arguing emanating from 3785 Washington Street. Officer Bernard proceeded immediately to the location of the disturbance. En route, the officer received a second dispatch from the 911 operator indicating the caller was reporting continued gunshots and arguing. Officer Bernard arrived at the designated address at approximately 10:29 p.m., within a minute of the second dispatch from the emergency operator. Providing back-up in a separate patrol car was Officer Marcus Billips, who also responded to the emergency dispatch.

Upon arrival, Officer Bernard pulled into the driveway of the residence located at 3785 Washington Street, a mobile home occupied by Appellant. The officer illuminated the residence with his headlights and spotlight. On the porch of the residence were Appellant and his wife, Lena Holloway. Due to the high-risk nature of the 911 call, Officer Bernard drew his service weapon as he exited his vehicle. From behind his car door, Officer Bernard instructed Appellant and his wife to raise their hands into view. Appellant complied; his wife did not. As directed, Appellant stepped off the porch and walked towards Officer Bernard and Officer Billips. As Appellant proceeded towards the officers, a third individual, later identified as neighbor Mike Machado, emerged from behind a horse trailer parked in the yard. The neighbor also was ordered to raise his hands and walk towards the officers. Both Appellant and his neighbor were instructed to lie on the ground facing away from the officers, their palms facing up.

Although the two men were compliant, Mrs. Holloway refused to leave the porch, and instead sat down on a chair. Despite several verbal commands, Mrs. Holloway refused to move. Suddenly, a child appeared in the doorway of the residence. The child was ordered back into the house. Ultimately, because of Mrs. Holloway's unresponsiveness, Officer Bernard threatened to employ his pepper spray. Finally, with encouragement from Appellant, Mrs. Holloway stepped

3

off the porch, but refused to raise her hands. By this time, Sergeant Randy Walters, who had arrived on the scene to provide additional support, stepped in to secure Mrs. Holloway.

After Mrs. Holloway was placed under control, Officer Bernard turned his attention to Appellant. The officer handcuffed Appellant and quickly patted him down to see if he was concealing a weapon. Officer Billips then engaged in the same procedure with respect to Mr. Machado. Once they were secured, the two men were placed separately in the officers' patrol cars. Altogether, approximately ten minutes elapsed from the time the officers arrived on the scene to the time those present were secured.

Having placed Appellant safely into his patrol car, Officer Bernard approached the residence to check for victims and weapons on the premises. In doing so, the officer observed several beer cans strewn about the yard and porch. As he stepped onto the porch, Officer Bernard saw a shotgun shell on top of the picnic table. Glancing around for a corresponding weapon, the officer located a model 870 Remington shotgun leaning against the side of the mobile home, approximately three feet from where Appellant had been standing when the officers first arrived. The safety was disengaged. Additional shotgun shells, two expended and one live, were found lying in the grass by the side of the residence.

4

Officer Bernard locked the weapon in the trunk of his patrol car and returned to the house to continue his search for victims and investigate the disturbance. No victims were found.

After ensuring that everyone on the scene was safe, Officer Bernard approached Appellant to inform him of the 911 call and to explain the officers' reasons for securing those present on the premises. As Officer Bernard was explaining the officers' actions, Appellant interrupted to describe what had transpired earlier that evening. According to Appellant, the commotion began when three males standing on the railroad tracks behind Appellant's mobile home started throwing rocks at his house and horses. In an effort to ward off the men, Appellant fired his shotgun into the air above the railroad tracks.

In light of his conversation with Appellant, Officer Bernard left to speak with Sergeant Walters. According to Sergeant Walters, Appellant's account of the evening's events matched an account given by Mrs. Holloway. Based on this information, Sergeant Walters determined there was sufficient cause to arrest Appellant.[1] Appellant was then placed under arrest by Officer Bernard at approximately 11:05 p.m., 36 minutes after the officers first arrived on the scene.

---

[1] Although it is not clear from the record, the Government stated at oral argument that Appellant was arrested for reckless endangerment and disorderly conduct.

Following his arrest, Appellant was indicted by a federal grand jury for possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g).[2] The firearm at issue was the model 870 Remington shotgun discovered by Officer Bernard at Appellant's residence on August 4, 1999. Claiming the search of his home violated the Fourth Amendment, Appellant moved the district court to suppress the firearm and any other evidence seized by Officer Bernard. Appellant's motion to suppress was denied. Thereafter, Appellant pled guilty, preserving the right to appeal the denial of his motion to suppress. This appeal followed.[3]

---

[2]Appellant was convicted of first degree assault on August 11, 1983.

[3]In addition to appealing the denial of his motion to suppress the firearm and other evidence seized by Officer Bernard, Appellant also appeals the district court's denial of his motion to suppress incriminating statements made to Officer Bernard concerning the events of August 4, 1999. He argues these statements were made in violation of the Fifth Amendment and *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602 (1966). Having considered Appellant's arguments as to this issue in light of the record, we affirm without discussion the district court's denial of his motion to suppress statements. *See* 11th Cir. R. 36-1.

## II.  STANDARD OF REVIEW

Review of a district court's denial of a motion to suppress evidence is a mixed question of law and fact.  *United States v. Alexander*, 835 F.2d 1406, 1408 (11th Cir. 1988).  The district court's findings of fact are reviewed under the clearly erroneous standard, whereas its application of the law is subject to *de novo* review.  *Id.*  In reviewing the district court's ruling, this Court must construe the facts in the light most favorable to the party prevailing below, which, in this case, is the Government.  *United States v. Wilson*, 894 F.2d 1245, 1254 (11th Cir. 1990).

## III.  DISCUSSION

This case presents an issue of first impression to this Circuit concerning whether law enforcement officials may conduct a warrantless search of a private residence in response to an emergency situation reported by an anonymous 911 caller.  We conclude that when exigent circumstances demand an immediate response, particularly where there is danger to human life, protection of the public becomes paramount and can justify a limited, warrantless intrusion into the home.  Once in the home, officers may seize any evidence found within plain view.

### A.      *Warrantless Search of Appellant's Residence*

The Fourth Amendment to the Constitution of the United States sets forth a general proscription on warrantless searches of a person's home:  "The right of the

people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . . ." U.S. Const. amend. IV. The Fourth Amendment's prohibition of warrantless searches, however, is not absolute. Although there is a strong preference for searches and entries conducted under the judicial auspices of a warrant, the United States Supreme Court has crafted a few carefully drawn exceptions to the warrant requirement to cover situations where "the public interest require[s] some flexibility in the application of the general rule that a valid warrant is a prerequisite for a search." *Arkansas v. Sanders*, 442 U.S. 753, 759, 99 S. Ct. 2586, 2590 (1979). One such exception is that the police may enter a private premises and conduct a search if "exigent circumstances" mandate immediate action. *See Michigan v. Tyler*, 436 U.S. 499, 509, 98 S. Ct. 1942, 1949-50 (1978).

The exigent circumstances exception recognizes a "warrantless entry by criminal law enforcement officials may be legal when there is compelling need for official action and no time to secure a warrant." *Michigan*, 436 U.S. at 509, 98 S. Ct. at 1949. The exception encompasses several common situations where resort to a magistrate for a search warrant is not feasible or advisable, including: danger of flight or escape, loss or destruction of evidence, risk of harm to the public or the police, mobility of a vehicle, and hot pursuit. *See Johnson v. United States*, 333

8

U.S. 10, 14-15, 68 S. Ct. 367, 369 (1948) (listing situations falling within exigent circumstances exception); *see also United States v. Reid*, 69 F.3d 1109, 1113-14 (11th Cir. 1995) (upholding warrantless search of residence based on exigent circumstances arising from risk of losing evidence, risk of flight, and danger of harm to public or officers); *United States v. Forker*, 928 F.2d 365, 368-69 (11th Cir. 1991) (upholding warrantless search of vehicle based on mobility); *United States v. Tobin*, 923 F.2d 1506, 1510-11 (11th Cir. 1991) (en banc) (upholding warrantless search of residence based on danger narcotics would be destroyed or removed); *United States v. Burgos*, 720 F.2d 1520, 1525-26 (11th Cir. 1983) (upholding warrantless search of residence based on threat of injury to neighborhood arising from defendant's stash of weapons); *United States v. Blasco*, 702 F.2d 1315, 1326 (11th Cir. 1983) (upholding warrantless search based on imminent danger of flight or escape); *United States v. Kreimes*, 649 F.2d 1185, 1192 (5th Cir. Unit B 1981) (upholding warrantless search based on hot pursuit and danger posited by possibility of armed fugitive remaining at large).[4]

---

[4]In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), this Court adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to close of business on September 30, 1981.

One of the most compelling events giving rise to exigent circumstances is the occurrence of an emergency situation. The Supreme Court has long recognized that emergencies sometimes obviate the need to obtain a search warrant prior to entering a private residence. *See, e.g., Michigan,* 436 U.S. at 509, 98 S. Ct. at 1950 ("A burning building clearly presents an exigency of sufficient proportions to render a warrantless entry 'reasonable.' Indeed, it would defy reason to suppose that firemen must secure a warrant or consent before entering a burning structure to put out the blaze."); *Vale v. Louisiana,* 399 U.S. 30, 35, 90 S. Ct. 1969, 1972 (1970) (noting warrantless search could not be justified based on exigent circumstances, where police officers were not responding to an emergency); *McDonald v. United States,* 335 U.S. 451, 454, 69 S. Ct. 191, 193 (1948) ("Where, as here, officers are not responding to an emergency, there must be compelling reasons to justify the absence of a search warrant.").

The most urgent emergency situation excusing police compliance with the warrant requirement is, of course, the need to protect or preserve life. *Mincey v. Arizona,* 437 U.S. 385, 392, 98 S. Ct. 2408, 2413 (1978). In *Mincey,* an undercover police officer who had arranged a narcotics transaction with the defendant arrived at the defendant's apartment with several other officers. *Id.* at 387, 98 S. Ct. at 2410-11. When the door to the apartment was opened in response

10

to his knocks, the undercover officer slipped inside and moved quickly into the bedroom. *Id.*, 98 S. Ct. at 2411. As the other officers entered the apartment, they heard a volley of gunshots emanating from the bedroom. *Id.*, 98 S. Ct. at 2411. The undercover officer emerged from the bedroom and collapsed on the floor. *Id.*, 98 S. Ct. at 2411. The other officers then entered the bedroom, where they found the defendant lying on the floor, wounded and semiconscious. *Id.*, 98 S. Ct. at 2411. A search for victims revealed an injured woman in the closet and three accomplices, one of whom was wounded in the head. *Id.* at 388, 98 S. Ct. at 2411. After the scene was secured, homicide detectives arrived at the apartment to search for evidence. *Id.* at 388-89, 98 S. Ct. at 2411. Although the search lasted four days, no warrant was ever obtained. *Id.* at 389, 98 S. Ct. at 2411.

On appeal, the defendant argued the evidence seized during the homicide detectives' four-day search of his apartment should be suppressed as the product of an unlawful warrantless search. 437 U.S. at 388, 98 S. Ct. at 2411. The Supreme Court agreed, holding there is no general "murder scene" exception to the Fourth Amendment. *Id.* at 395, 98 S. Ct. at 2415. Although the four-day search of the defendant's apartment was unlawful because it was not strictly circumscribed by the exigencies which justified its initiation, the Supreme Court nevertheless

endorsed the authority of police officers to make warrantless entries and searches based on emergency circumstances:

> We do not question the right of the police to respond to emergency situations. Numerous state and federal cases have recognized that the Fourth Amendment does not bar police officers from making warrantless entries and searches when they reasonably believe that a person within is in need of immediate aid. Similarly, when the police come upon the scene of a homicide they may make a prompt warrantless search of the area to see if there are other victims or if a killer is still on the premises. *Cf. Michigan v. Tyler, supra*, 436 U.S., at 509-510, 98 S. Ct. at 1950-1951. "The need to protect or preserve life or avoid serious injury is justification for what would be otherwise illegal absent an exigency or emergency." *Wayne v. United States*, 115 U.S. App. D.C. 234, 241, 318 F.2d 205, 212 (opinion of Burger, J.).

*Id.* at 392-93, 98 S. Ct. at 2413.

The Supreme Court's endorsement of warrantless searches based on an endangerment to life also is evident in *Warden v. Hayden*, 387 U.S. 294, 87 S. Ct. 1642 (1967). In *Hayden*, two taxi drivers reported seeing an armed robber run into a residence at 2111 Cocoa Lane. 387 U.S. at 297, 107 S. Ct. at 1645. Within minutes, police arrived at the house. *Id.*, 107 S. Ct. at 1645. During a search of the premises, the defendant was discovered in an upstairs bedroom and arrested. *Id.* at 298, 107 S. Ct. at 1645. A shotgun and pistol, located in an adjoining bathroom's flush tank, were seized. *Id.*, 107 S. Ct. at 1645. Also seized were a jacket and

12

trousers of the type the robber was said to have worn, which were found in the washing machine. *Id.*, 107 S. Ct. at 1645.

On appeal, the Supreme Court considered whether the warrantless search of the residence was constitutional. Based on the exigencies of the situation, the Court upheld the search:

> We agree with the Court of Appeals that neither the entry without warrant to search for the robber, nor the search for him without warrant was invalid. Under the circumstances of this case, "the exigencies of the situation made that course imperative." *McDonald v. United States*, 335 U.S. 451, 456, 69 S. Ct. 191, 193, 93 L. Ed. 153. . . . The Fourth Amendment does not require police officers to delay in the course of an investigation if to do so would gravely endanger their lives or the lives of others. Speed here was essential, and only a thorough search of the house for persons and weapons could have insured that Hayden was the only man present and that the police had control of all weapons which could be used against them or to effect an escape.

387 U.S. at 298-99, 87 S. Ct. at 1645-46.

Following the reasoning of the Supreme Court, numerous federal and state courts have upheld warrantless emergency entries and searches based on endangerment to life. *See, e.g., United States v. Hughes*, 993 F.2d 1313 (7th Cir. 1993) (report of woman and child in danger in crack house); *United States v. Gillenwaters*, 890 F.2d 679 (4th Cir. 1989) (stabbing victim); *United States v. Martin*, 781 F.2d 671 (9th Cir. 1985) (explosion in apartment); *Mann v. Cannon*, 731 F.2d 54 (1st Cir. 1984) (open access to controlled substances by children);

13

*United States v. Riccio*, 726 F.2d 638 (10th Cir. 1984) (medical aid to defendant shot by police); *United States v. Jones*, 635 F.2d 1357 (8th Cir. 1980) (report of gunshots); *United States v. Barone*, 330 F.2d 543 (2d Cir. 1964) (screams in the night); *United States v. Searle*, 974 F. Supp. 1433 (M.D. Fla. 1997) (report of gunshots); *United States v. Herndon*, 390 F. Supp. 1017 (S.D. Fla. 1975) (report of gunshots); *United States v. Hogue*, 283 F. Supp. 846 (N.D. Ga. 1968) (report of dead body); *Johnson v. State*, 386 So. 2d 302 (Fla. App. 1980) (report of dead body); *State v. Carlson*, 548 N.W.2d 138 (Iowa 1996) (missing person); *State v. Butler*, 676 S.W.2d 809 (Mo. 1984) (en banc) (gunshot victim); *State v. Mackins*, 266 S.E.2d 694 (N.C. App. 1980) (gunshots); *State v. Max*, 263 N.W.2d 685 (S.D. 1978) (gunshots).

Although this Court has not directly addressed emergency searches based on endangerment to life, we have on at least two occasions generally endorsed the validity of such searches. *See United States v. Brand*, 556 F.2d 1312 (5th Cir. 1977) (noting defendant's concession that police officer who assisted ambulance attendants with medical emergency legally entered home); *United States v. Green*, 474 F.2d 1385 (5th Cir. 1973) (indicating deputy fire marshal could validly search apartment to determine cause of fire where ascertaining cause was necessary to assure fire was completely extinguished). Furthermore, upholding warrantless

14

searches in such situations is consistent with our jurisprudence concerning the exigent circumstances exception.

Based on the foregoing, we conclude emergency situations involving endangerment to life fall squarely within the exigent circumstances exception. It is difficult to imagine a scenario in which immediate police action is more justified than when a human life hangs in the balance. Although the Fourth Amendment protects the sanctity of the home, its proscription against warrantless searches must give way to the sanctity of human life. When the police reasonably believe an emergency exists which calls for an immediate response to protect citizens from imminent danger, their actions are no less constitutional merely because the exigency arises on the wooden doorsteps of a home rather than marble stairs of a public forum.

Of course, the burden of proving an exception to the warrant requirement lies with the Government. *United States v. Jeffers*, 342 U.S. 48, 51, 72 S. Ct. 93, 95 (1951). In validating a warrantless search based on the existence of an emergency, as with any other situation falling within the exigent circumstances exception, the Government must demonstrate both exigency and probable cause. *See United States v. Blasco*, 702 F.2d 1315, 1324 (11th Cir. 1983) ("The Supreme Court . . . has recognized that circumstances sometimes preclude the preferred

route of obtaining a warrant, and consequently, has allowed warrantless searches and seizures of a residence where *both* probable cause and exigent circumstances exist."); *see also United States v. Tobin*, 923 F.2d 1506, 1510-11 (11th Cir. 1991) (en banc) (noting warrantless search of home can be justified based on exigent circumstances where there is both exigency and probable cause).

In the typical case, probable cause exists where the circumstances would lead a reasonable person to believe a search will disclose evidence of a crime. *United States v. Burgos*, 720 F.2d 1520, 1525 (11th Cir. 1983). In emergencies, however, law enforcement officers are not motivated by an expectation of seizing evidence of a crime. Rather, the officers are compelled to search by a desire to locate victims and the need to ensure their own safety and that of the public. *See generally* Note*, The Emergency Doctrine, Civil Search and Seizure, and the Fourth Amendment*, 43 Fordham L. Rev. 571, 582 (1975) ("Generally it is not difficult to determine when the emergency doctrine is being applied. The police usually are acting to help a person in distress, not to find evidence of criminal acts."). Thus, in an emergency, the probable cause element may be satisfied where officers reasonably believe a person is in danger. *See Koch v. Town of Brattleboro*, 287 F.3d 162 (2d Cir. 2002) (stating probable cause for forced entry in response to exigent circumstances requires probability a person is in danger); *Tierney v.*

16

*Davidson*, 133 F.3d 189, 196-97 (2d Cir. 1998) (holding police officers may enter dwelling without warrant if, based on objective standard, they reasonably believe individual is in distress); *Root v. Gauper*, 438 F.2d 361, 364-65 (8th Cir. 1971) (holding warrantless search based on emergency requires assessment of whether officers reasonably believe such action is necessary).

In light of these principles, we conclude the Alexander City police officers in this case did not violate the Fourth Amendment when they conducted a warrantless search of Appellant's home. Late into the evening on August 4, 1999, Officer Bernard received a dispatch from a 911 operator relaying a report of gunshots and arguing at Appellant's address. Immediately thereafter, he received a second dispatch indicating continued gunshots and arguing. Officer Bernard and Officer Billips promptly proceeded to the residence, arriving within minutes of the first dispatch. Upon arrival, nothing at the mobile home dissuaded the officers from believing the veracity of the 911 calls. Rather, the presence of Appellant and his wife on the front porch supported the information conveyed by the 911 caller.

Under the circumstances known to them at that time, the officers reasonably believed an emergency situation justified a warrantless search of Appellant's home for victims of gunfire. The possibility of a gunshot victim lying prostrate in the dwelling created an exigency necessitating immediate search. Additionally, based

17

on the information conveyed by the 911 caller and the personal observations of the officers, there was probable cause to believe a person located at the residence was in danger.  Under the exigent circumstances exception to the Fourth Amendment, the officers were not required to obtain a warrant before entering Appellant's home.

In reaching this conclusion, we do not overlook the holding of *Florida v. J.L.*, 529 U.S. 266, 120 S. Ct. 1375 (2000).  In *J.L.*, an anonymous caller reported that a young man fitting a certain description and located at a specific place was carrying a firearm.  529 U.S. at 268, 120 S. Ct. at 1377.  Responding to the tip, police officers conducted an investigatory stop of a man fitting the caller's description.  *Id.*, 120 S. Ct. at 1377.  During a pat-down of the man, a firearm was discovered and seized.  *Id.*, 120 S. Ct. at 1377.  On appeal, the Supreme Court held the investigatory stop was unconstitutional because it was based solely on an anonymous tip which lacked sufficient indicia of reliability.  *Id.* at 270-71, 120 S. Ct. at 1378-79.

Appellant's assertions notwithstanding, the holding in *J.L.* does not preclude our decision in this case.  A crucial distinction between *J.L.* and this case is the fact that the investigatory stop in *J.L.* was not based on an emergency situation.  This difference was expressly contemplated by *J.L.*:

The facts of this case do not require us to speculate about the circumstances under which the danger alleged in an anonymous tip might be so great as to justify a search even without a showing of reliability. We do not say, for example, that a report of a person carrying a bomb need bear the indicia of reliability we demand for a report of a person carrying a firearm before the police can constitutionally conduct a frisk.

529 U.S. at 273-74, 120 S. Ct. at 1380. Thus, when an *emergency* is reported by an anonymous caller, the need for immediate action may outweigh the need to verify the reliability of the caller. *Id.*, 120 S. Ct. at 1380.

In this case, the warrantless search of Appellant's residence was based largely on information provided by an anonymous caller.[5] However, the information given by the caller involved a serious threat to human life. Furthermore, the information concerned an on-going emergency requiring immediate action. In light of the nature of the 911 call, a lesser showing of reliability than demanded in *J.L.* was appropriate in order to justify the search of Appellant's home. Because the police had no reason to doubt the veracity of the 911 call, particularly in light of the personal observations of the officers once they arrived on the scene, their warrantless search for victims was constitutional.

---

[5]The record is actually unclear regarding whether the 911 caller provided any identifying information. For purposes of this appeal, however, it is assumed the 911 caller was anonymous.

19

This result makes sense.   Not surprisingly, 911 calls are the predominant means of communicating emergency situations.[6]  *United States v. Richardson*, 208 F.3d 626, 630 (7th Cir. 2000) ("A 911 call is one of the most common — and universally recognized — means through which police and other emergency personnel learn that there is someone in a dangerous situation who urgently needs help.").  Such calls are distinctive in that they concern contemporaneous emergency events, not general criminal behavior.  Additionally, the exigencies of emergency situations often limit the ability of a caller to convey extraneous details, such as the identifying information.[7]  Furthermore, some callers, particularly neighbors, may be understandably reticent to give identifying information for fear of retaliation or danger.  Thus, the fact that a 911 caller chooses — or is forced —

---

[6]Many emergency searches arise from information provided by 911 callers. *See, e.g., United States v. Richardson*, 208 F.3d 626 (7th Cir. 2000) (upholding warrantless search of apartment based on 911 call reporting woman had been raped and murdered in apartment); *United States v. Cunningham*, 133 F.3d 1070 (8th Cir. 1998) (upholding search arising from 911 call indicating occupant of home was being held against her will); *United States v. Gwinn*, 46 F. Supp. 2d 479 (S.D.W. Va. 1999) (upholding warrantless search of mobile home where police responded to emergency call stating man was threatening someone with gun); *United States v. Guarente*, 810 F. Supp. 350 (D. Me. 1993) (upholding warrantless entry into residence based on 911 call about domestic dispute involving weapon).

[7]Either injury, the sheer need to seek shelter or cover, or simply the exigencies of the moment, may very well prevent an individual placing a 911 call from providing standard identifying information.

20

to remain anonymous may very well have little bearing on the veracity of the caller. If law enforcement could not rely on information conveyed by anonymous 911 callers, their ability to respond effectively to emergency situations would be significantly curtailed.

Once presented with an emergency situation, the police must act quickly, based on hurried and incomplete information. Their actions, therefore, should be evaluated "by reference to the circumstances then confronting the officer, including the need for a prompt assessment of sometimes ambiguous information concerning potentially serious consequences." 3 Wayne LaFave, *Search and Seizure* § 6.6(a), at 391 (3d ed. 1996). As illustrated in an oft-quoted commentary from Chief Justice (then Judge) Burger, police officers must be given the authority and flexibility to act quickly, based on limited information, when human life is at stake:

> [A] warrant is not required to break down a door to enter a burning home to rescue occupants or extinguish a fire, to prevent a shooting or to bring emergency aid to an injured person. The need to protect or preserve life or avoid serious injury is justification for what would be otherwise illegal absent an exigency or emergency. Fires or dead bodies are reported to police by cranks where no fires or bodies are to be found. Acting in response to reports of "dead bodies," the police may find the "bodies" to be common drunks, diabetics in shock, or distressed cardiac patients. But the business of policemen and firemen is *to act*, not to speculate or meditate on whether the report is correct. People could well die in emergencies if police tried to act with the

21

calm deliberation associated with the judicial process. Even the apparently dead often are saved by swift police response.

*Wayne v. United States*, 318 F.2d 205, 212 (D.C. Cir. 1963).

The fact that no victims are found, or that the information ultimately proves to be false or inaccurate, does not render the police action any less lawful. *Wayne*, 318 F.2d at 212 ("When policemen, firemen or other public officers are confronted with evidence which would lead a prudent and reasonable official to see a need to act to protect life or property, they are authorized to act on that information, even if ultimately found erroneous."). As long as the officers reasonably believe an emergency situation necessitates their warrantless search, whether through information provided by a 911 call or otherwise, such actions must be upheld as constitutional.

### B.    *Warrantless Seizure of Appellant's Firearm and Other Evidence*

In conducting their search for victims, Officer Bernard and the other officers on the scene had reasonable cause to believe they were entering a volatile and potentially dangerous situation based on the prior report of gunshots. As a result, officer safety demanded the individuals present on the premises be temporarily secured prior to conducting their search. *See generally Maryland v. Wilson*, 519 U.S. 408, 413, 117 S. Ct. 882, 885 (1997) (holding police officer making traffic stop may order passengers out of car pending completion of investigatory stop for

protection of his own safety); *Michigan v. Summers*, 452 U.S. 692, 702-03, 101 S. Ct. 2587, 2594 (1981) (holding police officers effectuating in-home search warrant could detain occupant of premises during search based, in part, on potential risk of harm to officers). Once those individuals were under control, Officer Bernard was able to conduct a limited search of the residence.

During his search, Officer Bernard located a shotgun, which was likely the cause of the disturbance, in plain view. Because his warrantless presence on Appellant's property was justified by the exigencies of the situation, the officer was authorized to seize the shotgun without a warrant. *See Mincey v. Arizona*, 437 U.S. 385, 392, 98 S. Ct. 2408, 2413 (1978) ("[T]he police may seize any evidence that is in plain view during the course of their legitimate emergency activities."); *Coolidge v. New Hampshire*, 403 U.S. 443, 465, 91 S. Ct. 2022, 2037 (1971) ("Where the initial intrusion that brings the police within plain view of such an article is supported, not by a warrant, but by one of the recognized exceptions to the warrant requirement, the seizure is also legitimate."). The seizure of the firearm and other evidence, therefore, was constitutional.

## IV. CONCLUSION

Based on the exigent circumstances of gunshots and arguing originating from Appellant's residence, the police officers were justified in conducting a

23

warrantless search of the premises. While validly on the property, the officers were authorized to seize any evidence in plain view. As a result, neither the emergency search of Appellant's residence nor the seizure of the shotgun violated the Fourth Amendment's proscription against unreasonable searches and seizures.

AFFIRMED.