# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 04-2283

_____

United States of America,           *
                                           *

           Appellee,          *    Appeal from the United States
                                           *    District Court for the Eastern
   v.                           *    District of Missouri.
                                           *

James V. Heinen,              *       [UNPUBLISHED]
                                           *

           Appellant.        *

_____

Submitted:  January 11, 2005
Filed:  January 19, 2005

_____

Before WOLLMAN, FAGG, and BYE, Circuit Judges.

_____

PER CURIAM.

Police went to the mobile home of James V. Heinen to determine his well-being. Heinen met the officers outside his residence. Although Heinen had been drinking alcohol, was depressed, and told them he was having family problems, he did not appear to be a threat to himself or others, so the officers left. About an hour later, Heinen's brother contacted the police and told them Heinen was depressed, had family problems, and was threatening to kill himself. Heinen's brother had gone to Heinen's home where he saw Heinen had cut his arm with a knife. The two men had struggled over a handgun and it had discharged near Heinen's brother's head. Heinen's brother then fled the residence. Heinen's brother did not tell the officers

whether Heinen's family had left the residence and the officers did not know whether the family was there. The officers contacted a superior, who knew Heinen's family lived at the home. The superior learned from the officers that Heinen had been involved in a domestic dispute, was intoxicated, had barricaded himself, had fired a gun, was threatening suicide, and had threatened to kill anyone who tried to stop him.

The superior sent a team of officers back to Heinen's residence to conduct surveillance. While the officers were entering a wooded area near the home, they heard six to eight rounds of machine gun fire. They also heard Heinen yelling that everyone should leave him alone, and that he would kill anyone that came onto his property or into his residence. Heinen also told police on the telephone that he was in over his head and he was going to kill himself and anyone who tried to stop him. After the team was in position, an officer shot Heinen with nonlethal munitions as Heinen stood on his porch. Heinen fell back into his residence and yelled that he had been shot. For the next hour, police could not account for Heinen's family. They had not seen the family inside or outside the house. As the officers pulled a patrol car into Heinen's driveway, Heinen announced from inside the house that he intended to surrender. Heinen exited his house and walked to the front yard where officers secured him.

The officers saw blood on the porch railing, spindles, and decking. The officers knew Heinen had a gash on his forearm, had threatened to kill people, had domestic problems, and had shot off several rounds from a machine gun. The officers did not know whether Heinen's family members, who lived in the residence, were there. Concerned for the safety of Heinen's family, who could be injured inside the home, the officers entered the residence to search for any victims. The officers went through the home in less than a minute, looking anywhere a person could be found. They initially saw more blood on the floor, appliances, walls, cabinets, and carpet, even though Heinen's clothing was not soaked with blood. During the sweep,

officers found several firearms in plain view, including an AK-47 machine gun leaning against a wall of the master bedroom.

The Government charged Heinen with unlawful possession of a machine gun. Heinen filed a motion to suppress the gun asserting it was the product of an illegal search. After the district court[*] denied Heinen's motion to suppress, he pleaded guilty. Heinen appeals, and we affirm.

When evaluating the suppression order, we review the district court's factual findings for clear error and its legal conclusions de novo. United States v. Janis, 387 F.3d 682, 686 (8th Cir. 2004). We must affirm the denial unless the decision is unsupported by substantial evidence, is based on an erroneous view of the applicable law, or in light of the entire record, we are left with the firm and definite conviction that a mistake has been made. Id.

Although the Fourth Amendment generally prohibits the warrantless search of a person's home, police may enter a private residence and conduct a search if exigent circumstances require immediate action. Janis, 387 F.3d at 687; United States v. Holloway, 290 F.3d 1331, 1334 (11th Cir. 2002). Exigent circumstances include emergency situations involving legitimate concern for the safety of individuals. Janis, 387 F.3d at 687; Holloway, 290 F.3d at 1335-37. Officers may enter a home in an emergency without a warrant if they reasonably believe a person is in danger. Holloway, 387 F.3d at 1338.

Under the circumstances known to them at the time, the officers reasonably believed an emergency situation justified a warrantless search of Heinen's home to see whether his family members were injured and in need of aid. Id. The fact that no

---

[*]The Honorable Rodney W. Sippel, United States District Judge for the Eastern District of Missouri.

victims were found does not render the police action unlawful.  Id. at 1340.  During the search, the officers saw a machine gun leaning against the bedroom wall in plain view.   Because the officers' warrantless presence in Heinen's home was justified by the emergency situation, the officers could lawfully seize the machine gun without a warrant.  Id.; Janis, 387 F.3d at 688.

We thus affirm the district court's denial of Heinen's motion to suppress.

_____