[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 12-12195
Non-Argument Calendar
_____

D.C. Docket No. 5:11-cr-00019-RS-LB-1


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JOSEPH TYRELL DUHON,

Defendant-Appellant.


_____

Appeal from the United States District Court
for the Northern District of Florida
_____
(January 15, 2013)

Before CARNES, BARKETT and MARTIN, Circuit Judges.

PER CURIAM:

Joseph Tyrell Duhon moved to suppress evidence obtained from a search of

his apartment.  Following an evidentiary hearing, the district court denied Duhon's

motion.  Duhon reserved the right to appeal this decision, which the government agreed was dispositive in his case, and Duhon pleaded guilty to: (1) possession of a firearm in furtherance of drug trafficking, in violation of 18 U.S.C. § 924(c)(1)(A)(i); and (2) possession of a firearm and ammunition by a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2).  Duhon then appealed the district court's denial of his motion to suppress.

"Because rulings on motions to suppress involve mixed questions of fact and law, we review the district court's factual findings for clear error, and its application of the law to the facts de novo."  United States v. Bervaldi, 226 F.3d 1256, 1262 (11th Cir. 2000).  Further, "all facts are construed in the light most favorable to the prevailing party below."  Id.

## I.    BACKGROUND

Shawndretta Hawkins brought her twenty-two month old nephew to the emergency room with life threatening injuries.  Shawndretta informed Officer Kerry Olson that the child already had the injuries when her sister, Courtney Hawkins, left him with Shawndretta.  She also explained that Courtney had a newborn baby and lived at Edgewood Gardens Apartments with her boyfriend, Duhon, known only to Shawndretta as "J."  Officer Olson contacted dispatch and asked that officers be sent to Courtney and Duhon's residence to check on the welfare of the newborn baby.

2

Officers Beaty, Flores, Walker, and Johnson went to the apartment. Beforehand, Officer Johnson informed the others that a few weeks earlier he had been dispatched to speak with an alleged battery victim. That victim was Shawndretta. At that time, Shawndretta told officers that her sister's boyfriend, known to her as "J," threw her to the ground and tried to choke her outside of his apartment at Edgewood Apartments. J also tried to strike one of Shawndretta's children. Shawndretta wrote a victim statement, but because she did not know J's full name and Officer Johnson could not locate J, Officer Johnson could only complete a report and put it aside until he got further information.

When they arrived at the apartment, Officers Johnson and Walker went around back and Officers Beaty and Flores went to the front. Officer Beaty knocked on the door repeatedly. He heard people inside, but no one answered the door. After Officer Beaty knocked, Officer Johnson saw the lights in the back of apartment go out. The Officers in the front of the apartment were notified. Officers Walker then saw a man, Duhon, try to leave the apartment through the back window. Officers Johnson and Walker ordered him to show his hands and get on the ground. They also ordered him, or the female voice they heard, to open the front door.

Shortly after, Courtney opened the front door with her newborn in her arms. Officer Beaty asked, "[w]here is he?" Courtney stepped aside, indicated that "he"

was in the back, Officer Beaty took a step in, saw Duhon, and handcuffed Duhon on the floor of the apartment.

While Duhon was being taken away from the apartment, Sergeant Smith, who had arrived as back-up, did a protective sweep of the apartment. He found marijuana on top of a bed and a rifle in the bedroom closet. Sergeant Smith determined that no one else was in the apartment, so the house was secured and the officers waited for a warrant. It is undisputed that the marijuana and rifle, if lawfully found, provided probable cause for a warrant. Neither is it disputed that the warrant-based search revealed more contraband.

## II. DISCUSSION

Duhon argues that there was neither probable cause nor exigent circumstances to support the officers' warrantless entry into his home and his arrest. Duhon further argues that because his in-home arrest was unlawful and the "officers had no basis to believe anyone else was in the home," the subsequent protective sweep was also unlawful. Without the "fruit" of the unlawful protective sweep, there was no probable cause for the search warrant.

### A. THE ARREST

Searches and seizures inside a home without a warrant are presumptively unreasonable. Payton v. New York, 445 U.S. 573, 586, 100 S. Ct. 1371, 1380 (1980). "[A] warrantless arrest in a home violates the Fourth Amendment unless

4

the arresting officer had probable cause to make the arrest <u>and</u> either consent to enter or exigent circumstances demanding that the officer enter the home without a warrant." <u>Bashir v. Rockdale County, Ga.</u>, 445 F.3d 1323, 1328 (11th Cir. 2006).

1. <u>Probable Cause</u>

Probable cause for an arrest exists when an arrest is "objectively reasonable based on the totality of the circumstances." <u>McCormick v. City of Fort Lauderdale</u>, 333 F.3d 1234, 1243 (11th Cir. 2003). "This standard is met when the facts and circumstances within the <u>officer's knowledge</u>, of which he or she has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." <u>Id.</u> "Probable cause requires more than mere suspicion, but does not require convincing proof." <u>Bailey v. Bd. of County Comm'rs</u>, 956 F.2d 1112, 1120 (11th Cir. 1992).

Here, the officers knew that a toddler had been badly abused. They had been told that the toddler was injured before Courtney left him with Shawndretta and that the toddler lived at the residence with Courtney and her boyfriend. They also knew that Shawndretta had reported Courtney's boyfriend for battery on herself and attempted battery upon her daughter outside of the same residence.

Even if this information was not enough for the officers to have probable cause to arrest Duhon when they first arrived, probable cause arose once the

5

officers witnessed Duhon's behavior at the scene.  The officers could tell that there were people in the apartment, but when the officers knocked and announced themselves no one answered the door.  Then, the apartment lights were turned off.  Finally, Duhon attempted to escape the apartment.  See United States v. Herzbrun, 723 F.2d 773, 778 (11th Cir. 1984) ("Although flight alone will not provide probable cause that a crime is being committed, in appropriate circumstances it can supply the key ingredient justifying the decision of a law enforcement officer to take action." (quotation marks omitted)).

2.  Exigent Circumstances

The exigent circumstances exception to the warrant requirement recognizes that "warrantless entry by criminal law enforcement officials may be legal when there is compelling need for official action and no time to secure a warrant." United States v. Holloway, 290 F.3d 1331, 1334 (11th Cir. 2002).  Underlying the exigent circumstances exception is the notion that "[o]nce presented with an emergency situation, the police must act quickly, based on hurried and incomplete information." Id. at 1339.  Officers' actions, therefore, "should be evaluated by reference to the circumstances then confronting the officer, including the need for a prompt assessment of sometimes ambiguous information concerning potentially serious consequences." Id.  Based on all of the circumstances confronting the officers at the residence here, the police were reasonable to believe that an

6

emergency situation justified a warrantless entry. The absence of any of the following could have led to a different result.

The officers were at the residence because a young child had been violently abused, a very serious offense. They had reason to believe that child was abused by either his mother or the mother's boyfriend, both of whom lived at the residence. The officers were also concerned about the safety of a newborn baby living there. Before going to the apartment, the officers learned that the mother's boyfriend was potentially violent, because there was an open battery investigation against him based on a separate incident.

Once at the house, the unique circumstances also contributed to the sense of emergency. It was late at night. There were a number of people in the house, who were moving around. When the officers repeatedly knocked and announced themselves no one came to the door, but the lights were turned out. The officers became increasingly concerned about their safety and the safety of the people inside the house. Significantly, Duhon tried to escape the house through a window. Although the officers prevented Duhon from escaping, he was still roaming around inside the home and presented a potential danger to the officers and others. Based on these circumstances, taken as a whole, the warrantless entry into the apartment was not unreasonable.

## B. THE PROTECTIVE SWEEP

"A 'protective sweep' is a quick and limited search of premises, incident to an arrest and conducted to protect the safety of police officers or others." Maryland v. Buie, 494 U.S. 325, 327, 110 S. Ct. 1093, 1094 (1990).  A protective sweep is permitted "in conjunction with an in-home arrest when the searching officer possesses a reasonable belief based on specific and articulable facts that the area to be swept harbors an individual posing a danger to those on the arrest scene."  Id. at 337, 110 S. Ct. 1099-1100.

As set out above, the protective sweep of Duhon's home was conducted in conjunction with a lawful in-home arrest.  In light of the circumstances facing the officers at the time of Duhon's arrest, the protective sweep was lawful.  During the protective sweep the officers found a firearm and marijuana, which gave probable cause to support the search warrant.


**AFFIRMED.**