[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 14-11474
Non-Argument Calendar
_____

D.C. Docket No. 1:13-cr-20765-DLG-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JOHNY DABREZIL,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(February 20, 2015)

Before WILSON, MARTIN, and BLACK, Circuit Judges.

PER CURIAM:

Johny Dabrezil appeals his convictions for one count of possession of 15 or more unauthorized access devices, in violation of 18 U.S.C. §§ 1029(a)(3) and 2, and three counts of aggravated identity theft, in violation of 18 U.S.C. §§ 1028A(a)(1) and 2.

Briefly stated, law enforcement officers received a report of a domestic assault with injuries at an apartment in North Miami Beach, Florida. Officers from the North Miami Beach Police Department responded to the scene. Officer Darren Fagan arrived on the scene first, and, within a minute of his arrival, Officers Juan Dolcine and Samuel Simon arrived. As Officer Fagan approached the apartment, he could hear an ongoing argument between a male and a female. After a brief series of authoritative knocks, Debrezil's visibly agitated live-in girlfriend opened the door. When he entered the apartment, Officer Fagan immediately detected the smell of marijuana coming from inside the apartment. To determine what had taken place, Officer Simon spoke with Dabrezil while Officer Fagan spoke with Dabrezil's live-in girlfriend. Meanwhile, Officer Dolcine entered the apartment and within seconds, also detected the smell of marijuana. Officer Dolcine conducted a limited inspection of the living room area, but did not extend his inspection to any other rooms in the apartment. His inspection revealed a small amount of marijuana along with some credit cards, both of which were located on the coffee table. After this discovery, Dabrezil was read his Miranda rights.

2

Shortly thereafter, Officer Craig Catlin arrived at Officer Dolcine's request. Approximately one minute later, Officers Fagan and Simon cleared the scene; their shifts had ended. Officer Catlin asked Officer Dolcine whether the other officers had checked the entire apartment to determine if anyone else was present, to which he responded they had not. Officer Catlin's subsequent inspection of the apartment's rooms revealed, among other things, a notebook and a ledger on top of the notebook with names, dates of birth, and social security numbers, all found lying on the bed in plain view.

On appeal, Dabrezil contends: 1) the officers violated his Fourth Amendment rights by entering and searching his apartment without a warrant, consent, or exigent circumstances; 2) the seizure of the Walmart visa card was improper under the plain view doctrine; and 3) the security sweep of the apartment's bedrooms, conducted by the officers 7 to 25 minutes after their arrival, violated the Fourth Amendment because no exigency existed at the time of the security sweep, and, as a result, the handwritten ledger found on top of the notebook on the bed in plain view during that sweep were seized unlawfully.

Upon review of the record and after careful consideration of the parties' briefs, we affirm.

3

## I.

We review a district court's denial of a motion to suppress as a mixed question of law and fact. *United States v. Franklin*, 694 F.3d 1, 7 (11th Cir. 2012). Unless clearly erroneous, we accept the district court's factual findings in resolving an exigent circumstance issue. *Id.* All facts are construed in the light most favorable to the prevailing party below. *Id.* We determine de novo whether the court erred in applying the law to those facts. *Id.* The denial of a motion to suppress may be affirmed on any ground supported by the record. *United States v. Caraballo*, 595 F.3d 1214, 1222 (11th Cir. 2010).

## II.

We begin by confronting Dabrezil's argument that the officers violated his Fourth Amendment rights by entering and searching his apartment. The Fourth Amendment protects persons and their "houses, papers, and effects" from "unreasonable searches and seizures." U.S. Const. amend. IV. Under the Fourth Amendment, searches and seizures inside a home without a warrant are presumptively unreasonable. *Franklin*, 694 F.3d at 7. However, a warrantless search of a home may be justified "where both probable cause and exigent circumstances exist." *Id.* (internal quotation marks omitted). The exigent circumstances doctrine applies when "there is compelling need for official action and no time to secure a warrant." *United States v. Holloway*, 290 F.3d 1331, 1334

(11th Cir. 2002) (internal quotation marks omitted).  The exigent circumstances

doctrine extends to situations involving "danger of flight or escape, loss or

destruction of evidence, risk of harm to the public or the police, mobility of a

vehicle, and hot pursuit."  *Id.*  The government bears the burden of demonstrating

that such an exception applies.  *Id.* at 1337.

"One of the most compelling" of these exigency exceptions is "the need to

protect or preserve life" in an emergency situation, *id.* at 1335, and is known as the

"emergency aid" exception, *Kentucky v. King*, 563 U.S. __, __, 131 S. Ct. 1849,

1856 (2011).  Under this exception, "officers may enter a home without a warrant

to render emergency assistance to an injured occupant or to protect an occupant

from imminent injury."  *Id.* (internal quotation marks omitted).  For the

emergency-aid exception to apply, officers must have an objectively reasonable

belief that someone inside is seriously injured, under threat of injury, or needs

serious aid.  *Brigham City, Utah v. Stuart*, 547 U.S. 398, 403–04, 126 S. Ct. 1943,

1947 (2006).  "The officer's subjective motivation is irrelevant."  *Id.* at 404, 126 S.

Ct. at 1948; *see also Kentucky*, 563 U.S. at __, 131 S. Ct. at 1859.

The officers that entered Dabrezil's home and searched it did so lawfully

because exigent circumstances existed.  The initial call made to the North Miami

Beach Police Department was made by Dabrezil's frantic and screaming live-in

girlfriend who reported injuries and requested rescue.  The computer-aided

5

dispatch report indicated a severity level of 3; which is associated with situations involving domestic violence or assault.  Based on this information, the officers had probable cause and were authorized to enter the apartment upon their arrival because it was objectively reasonable for the officers to believe that someone inside the apartment was either in danger or in need of immediate medical attention.  Therefore, this perceived exigency legalized the officers' presence within Dabrezil's apartment.

### III.

Next, we address Dabrezil's contention that the seizure of the Walmart visa card was improper under the plain view doctrine.  "The plain view doctrine permits a warrantless seizure where (1) an officer is lawfully located in the place from which the seized object can be plainly viewed and [has] a lawful right of access to the object itself; and (2) the incriminating character of the item is immediately apparent." *United States v. Smith*, 459 F.3d 1276, 1290 (11th Cir. 2006) (internal quotation marks omitted).  If the initial entry into the suspect's residence is lawful, the officers are permitted to seize any contraband that is in plain view within the residence.  The officers must have probable cause to believe that the object in plain view is contraband.  *Id.*  "In dealing with probable cause we deal with probabilities. . . . The substance of all the definitions of probable cause is a reasonable ground for belief of guilt." *Id.* at 1291 (internal quotation marks

6

omitted).

Officer Dolcine lawfully entered Dabrezil's apartment because, as discussed above, exigent circumstances existed—he was responding to a 911 call that reported a domestic assault with injuries.  Once lawfully in the apartment, Officer Dolcine saw the Walmart visa card among pieces of paper containing account numbers, and he immediately developed probable cause, or "reasonable ground[s]," to believe that the Walmart visa card was being used for criminal purposes.  *See id.* at 1291.  At the moment he saw the Walmart visa card on the table with what he believed to be account numbers, his training and experience exposed the incriminating character of the card and the account numbers, which lead him to believe that Dabrezil was committing tax fraud.  Officer Dolcine confirmed his suspicion after asking Debrezil's live-in girlfriend for Dabrezil's name, a name that did not match the name on the Walmart visa card.  Therefore, we conclude that the district court did not err in denying suppression of the Walmart visa card.

## IV.

Finally, we dispose of Dabrezil's argument that the security sweep of his apartment's bedrooms, conducted by the officers 7 to 25 minutes after their arrival, violated the Fourth Amendment because no exigency existed at the time of the security sweep, and, as a result, the handwritten ledger and notebook found in plain

7

view in the bedroom during that sweep were seized unlawfully.  Once lawfully inside a residence, officers may conduct a limited visual inspection, or protective sweep, to ensure no threats to officer safety are present.  *United States v. Timmann*, 741 F.3d 1170, 1181 (11th Cir. 2013).  A protective sweep may be undertaken "without an arrest warrant, so long as the officers are lawfully within the premises due to, for example, the existence of exigent circumstances."  *Id*.  A properly limited protective sweep may include "closets and other spaces immediately adjoining the place of arrest from which an attack could be immediately launched." *Maryland v. Buie*, 494 U.S. 325, 334, 110 S. Ct. 1093, 1098 (1990).  Such a sweep of adjoining spaces may be undertaken "without probable cause or reasonable suspicion."  *Id.*  The scope of a protective sweep is restricted to only areas large enough to harbor a person and therefore does not encompass closed drawers or containers.  *United States v. Hromada*, 49 F.3d 685, 690 (11th Cir. 1995). Whether or not a Fourth Amendment violation has occurred depends upon objective reasonableness in light of the facts and circumstances, and an officer's actual intent or motivation is irrelevant.  *See id.* at 690–91 (stating that an arresting officer's desire to search for evidence of illegal activity in executing protective sweep of defendant's residence pursuant to in-home arrest was irrelevant to the legality of the search as protective sweep).

8

As discussed above, like Officer Dolcine, Officer Catlin was lawfully within the residence  because exigent circumstances existed; he too was responding to a 911 call that reported a domestic assault with injuries and it was objectively reasonable to believe that someone inside was in danger.  *Brigham City*, 547 U.S. at 403–04, 126 S. Ct. at 1947.   It was also objectively reasonable for Officer Catlin to conduct the protective sweep of the areas adjoining the living room for officer safety immediately upon his arrival because none of the other officers had done so in the 7 to 25 minutes prior to his arrival and none of the other officers knew for sure whether someone else was in the apartment.  *See Maryland*, 494 U.S. at 334, 110 S. Ct. at 1098; *Hromada*, 49 F.3d at 691.  This protective sweep was objectively reasonable even if Officer Catlin secondarily hoped to find evidence of fraud.  *See Hromada*, 49 F.3d at 691.  During the sweep, Officer Catlin found lying on the bed a notebook and a ledger on top of the notebook with names, dates of birth, and social security numbers.  Based on the information in the ledger found on top of the notebook and the ledger's close proximity to the notebook itself, officers had probable cause to believe that the ledger was contraband and that the contents of the notebook beneath it contained similar incriminating information.  Therefore, the ledger and notebook that were in plain view during the protective sweep were properly seized.

**AFFIRMED.**

9