[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 17-14779
Non-Argument Calendar
_____

D.C. Docket No. 6:16-cv-00303-JA-GJK


ELVAN MOORE,

Plaintiff - Appellee,

versus

SHERIFF OF SEMINOLE COUNTY, FLORIDA SHERIFFS
OFFICE, et al.,

Defendants,

ANTHONY EGER,
Deputy (badge #3314),
WILLIAM DUNN,
Deputy (badge #3214),

Defendants - Appellants.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(August 30, 2018)

Before JILL PRYOR, HULL and JULIE CARNES, Circuit Judges.

PER CURIAM:

Elvan Moore brought a claim pursuant to 42 U.S.C. § 1983 against Officers Anthony Eger and William Dunn after they searched his residence without a warrant. He alleges that they violated his rights under the Fourth Amendment and also that, under Florida law, they violated his right to privacy and committed trespass. The officers moved for summary judgment, asserting that they were entitled to qualified immunity on Moore's federal claim and official immunity as to Moore's state claims. The district court denied the officers' motion, and the officers appealed. After careful review, we affirm the district court's denial of qualified immunity on Moore's federal claim. We dismiss for lack of subject matter jurisdiction the officers' appeal from the denial of official immunity on Moore's state law claims.

## I.    BACKGROUND

Moore and the defendant officers gave conflicting accounts of the events underlying this case. We thus note at the outset that "[i]n conducting *de novo* review of the district court's disposition of a summary judgment motion based on qualified immunity, we are required to resolve all issues of material fact in favor of the plaintiff." *Lee v. Ferraro*, 284 F.3d 1188, 1190 (11th Cir. 2002).

In the early morning hours of January 26, 2012, the Seminole County Sheriff's dispatch received an anonymous call reporting that a group of people had been "partying all night" at Moore's apartment and the party had become "a big old fight on the patio." Doc. 55.[1] The caller stated that she could hear a male and a female voice. The dispatcher radioed the deputies, informing them that a loud party had become a fight on the back patio and designating the call "a fight[] in progress," indicating that the call was a priority. Doc. 46 at 2. The dispatch report indicated that the fight was verbal.

Deputy Christopher Clutter was the first to respond to the dispatch. When he arrived at the reported address, he saw two people on the second floor balcony of the apartment, one male and one female. He did not see any evidence that anyone was injured or hear any arguing, but he could not see into the apartment. When Clutter knocked on the front door, the two individuals he had observed on the balcony answered the door. Clutter asked them whether there had been a fight. They responded that there had been a fight, but the people involved had departed shortly before Clutter's arrival. After informing Clutter that neither of them lived at the apartment, the two individuals went to retrieve Moore while Clutter waited at the door.

---

[1] Citations to "Doc. #" refer to the numbered entries on the district court's docket.

Moore came to the front door and asked Clutter if there was a problem; Clutter responded that there had been a report of a fight.  Clutter asked Moore to go get his identification, and Moore went upstairs to look for it.  While Moore was upstairs, Officers Eger, Dunn, and Ramon Otero arrived.  The officers testified that they saw no indication of a previous or an ongoing fight.  They testified that when Moore returned to the door he became agitated and argumentative and appeared intoxicated.  Moore testified that he was not intoxicated, but he admitted that he may have been swaying because he was angry due to the officers' presence.

One of the officers then stated that he was going inside the apartment. Moore asked the officers whether they had a warrant or had witnessed a crime, and one of the officers responded that they had not.  Moore told the officers they could not enter his apartment "under any circumstances."  Doc. 47-1 at 4.  Eger nonetheless passed Moore and walked into the apartment, mentioning something about Eger's girlfriend.[2]  Dunn followed Eger into the apartment.  Clutter and Otero remained outside with Moore.  One of the officers told Moore not to "worry about it," explaining that Eger was looking for his girlfriend, Lauren.[3]  Doc. 49 at 59.  According to Moore, a few minutes before the officers arrived, Lauren had left

---

[2] According to the officers, Moore first stated that the officers needed a warrant to enter his apartment, but eventually he opened the door and stated, "go ahead."  Doc. 50 at 17.  At summary judgment, however, we credit Moore's version of events.  *See Lee*, 284 F.3d at 1190.

[3] Eger testified that he had dated a woman named Lauren in 2012, but he could not recall if he was dating her at the time he entered Moore's home.

his apartment.  While they were inside, Dunn and Eger spoke to a man and woman who said the people involved in the fight had left.  After looking around the apartment for a few minutes, Dunn and Eger exited it.

Moore filed suit against Eger and Dunn in state court, and the defendants removed the case to federal district court.  In his amended complaint, Moore alleged claims under § 1983 that the officers had violated his rights under the Fourth Amendment.  He also alleged claims under Florida law for invasion of privacy and trespass.  The officers moved for summary judgment as to Moore's federal and state law claims based on qualified and official immunity, respectively, and the district court denied the motion.  This is the officers' appeal.

## II.    STANDARD OF REVIEW

We review the district court's denial of summary judgment *de novo*, viewing the facts in the light most favorable to the nonmoving party.  *Hadley v. Gutierrez*, 526 F.3d 1324, 1328 (11th Cir. 2008).  "We then answer the legal question of whether the defendant[] [is] entitled to qualified immunity under that version of the facts."  *Lee*, 284 F.3d at 1190 (alteration in original) (internal quotation marks omitted).

5

## III.   DISCUSSION

### A.    Qualified Immunity

To prove a claim brought under § 1983, a plaintiff must show that he "was deprived of a federal right by a person acting under color of state law." *Almand v. DeKalb Cty.*, 103 F.3d 1510, 1513 (11th Cir. 1997).  When defending against a § 1983 claim, a government official may assert the defense of qualified immunity, which "allow[s] government officials to carry out their discretionary duties without the fear of personal liability or harassing litigation." *Lee*, 284 F.3d at 1194.  A government official asserting this defense bears the initial burden of showing that "he was acting within his discretionary authority." *Skop v. City of Atlanta*, 485 F.3d 1130, 1136 (11th Cir. 2007).

Because it is clear that the officers were acting within their discretionary authority, the burden shifts to Moore to show that the officers are not entitled to qualified immunity.  *Cottone v. Jenne*, 326 F.3d 1352, 1358 (11th Cir. 2003).  To do so, Moore must show both (1) that the officers violated his constitutional rights and (2) that those rights were clearly established at the time of the conduct in question.  *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1264 (11th Cir. 2004).  The district court correctly determined that Moore satisfied both prongs of that test here.

6

We begin by considering whether Moore has shown that the officers violated his constitutional rights.  The officers argue they were permitted to enter Moore's residence without a warrant under the exigent circumstances exception to the warrant requirement.  We disagree.  The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."  U.S. Const. amend IV.  "Central to the protections provided by the Fourth Amendment is 'the right of a man to retreat into his own home and there be free from unreasonable governmental intrusion.'" *United States v. Timmann*, 741 F.3d 1170, 1178 (11th Cir. 2013) (quoting *Kyllo v. United States*, 533 U.S. 27, 31 (2001)).  Given the home's privileged place under the Fourth Amendment, the Supreme Court has long held that "searches and seizures inside a home without a warrant are presumptively unreasonable." *Payton v. New York*, 445 U.S. 573, 586 (1980).

"Nevertheless, there are several well-established exceptions to the warrant requirement." *Timmann*, 741 F.3d at 1178.  One such exception permits warrantless entry when "exigent circumstances" create a "compelling need for official action and [there is] no time to secure a warrant." *United States v. Holloway*, 290 F.3d 1331, 1334 (11th Cir. 2002) (internal quotation marks omitted).  "The most urgent of these exigencies is the need to protect or preserve life[,] . . . known as the emergency aid exception." *Timmann*, 741 F.3d at 1178

7

(internal quotation marks omitted).  Under this exception, officers may enter a home without a warrant to offer "emergency assistance to an injured occupant or to protect an occupant from imminent injury."  *Id*. (internal quotation marks omitted).

For the emergency aid exception to apply, "officers must have an objectively reasonable belief that someone inside is 'seriously injured or threatened with such injury,' and is in need of immediate aid."  *Id.* (quoting *Brigham City v. Stuart*, 547 U.S. 398, 403-04 (2006)).  "Courts have held police officers' belief that someone inside a home needs immediate assistance objectively reasonable under various circumstances."  *Id.* at 1179.  All of these cases "have in common the indicia of an urgent, ongoing emergency, in which officers have received emergency reports of an ongoing disturbance, arrived to find a chaotic scene, and observed violent behavior, or at least evidence of violent behavior."  *Id*.

As in *Timman*, "[t]he situation the officers confronted in the instant case bears none of these indicia of an urgent, ongoing emergency."  *Id.* at 1180.  The Sheriff's dispatch received an anonymous call reporting that a loud party at an apartment had become a fight on the patio.  After the dispatch reported a fight in progress, Clutter arrived at the apartment, where he observed two people simply standing on the second floor balcony.  They responded to Clutter's knock at the door and told him there had been a fight, but that the people involved had left the premises.  When Moore came to the door, Clutter asked him to go retrieve his

8

identification.  While Moore was upstairs, Dunn and Eger arrived.  After Moore returned to the doorway, the officers testified that Moore appeared angry, agitated, and intoxicated.  The officers announced their intent to enter the apartment and did so.  The circumstances the officers confronted when Moore returned to the front door of his apartment do not reflect the sense of urgency necessary to justify a warrantless search.  According to the officers' testimony, and as the district court correctly summarized, "there was no visible or audible chaos ensuing, [and there was] no evidence of injury."  Doc. 69 at 10.

We disagree with the officers that this case is like *United States v. Holloway*, in which we upheld a warrantless search under the exigent circumstances exception.  290 F.3d at 1338.  In that case, the officers had received multiple 911 dispatch reports of "gunshots and arguing" coming from the plaintiff's address.  *Id.* at 1332.  When the officers arrived to investigate, they observed two people on the porch, one of whom refused to comply with the officers' instructions.  *Id.*  The officers saw "several beer cans strewn about the yard and porch" and "a shotgun shell on top of the picnic table."  *Id.* at 1133.  The officers then conducted a warrantless search of the home.  *Id.*  In those circumstances, this Court held that the officers "reasonably believed an emergency situation justified a warrantless search of the [a]ppellant's's home for victims of gunfire," and thus there had been no Fourth Amendment violation.  *Id.* at 1138.  "The possibility of a gunshot victim

9

lying prostrate in the dwelling," we explained, "created an exigency necessitating immediate search." *Id.*

Here, unlike in *Holloway*, the officers received no report of a deadly weapon, nor did they observe any evidence of a "tumultuous" situation that would demand their immediate entry. *See Brigham City*, 547 U.S. at 406. The officers argue that, as in *Holloway*, here the officers observed no violent behavior, but the report of a fight was evidence of violence. But in *Holloway*, the officers received multiple reports of gunshots and observed a shotgun shell. Here, there was no evidence that the fight was ever physical; the dispatch report indicated it was verbal. But assuming for the sake of argument that the report of a fight on the patio in this case supported a reasonable belief that there may have been an injury, after the officers arrived at Moore's apartment, they found nothing to support that belief. The officers' impression that Moore was intoxicated or the fact that he was angry or argumentative does not create an exigent circumstance. Because here there were no "indicia of an urgent, ongoing emergency, in which officers have received emergency reports of an ongoing disturbance, arrived to find a chaotic scene, and observed violent behavior, or at least evidence of violent behavior," *Timmann*, 741 F.3d at 1179, objectively, they could not have reasonably believed that someone inside was seriously injured or in need of immediate aid. Thus, the

10

warrantless search they conducted violated Moore's constitutional rights. *See id.* at 1180-81.

Having determined the officers violated Moore's constitutional rights, we next consider whether those rights were clearly established. "The second qualified immunity inquiry is, in the context of this case, straightforward . . . ." *Skop*, 485 F.3d at 1143 (holding that binding precedent clearly established an arrest made without arguable probable cause violates the Fourth Amendment). Binding precedent clearly established, at the time of the search of Moore's home, that a search without a warrant or exigent circumstances violates the Fourth Amendment's prohibition on unreasonable searches and seizures.

## B.    State Law Immunity

We lack jurisdiction to review the denial of summary judgment on Moore's state law claims for trespass and invasion of privacy. Pendent appellate jurisdiction "is limited to questions that are inextricably interwoven with an issue properly before [this Court]." *Harris v. Bd. of Educ. of Atlanta*, 105 F.3d 591, 594 (11th Cir. 1997) (internal quotation marks omitted). Moore's state law claims are not resolved by our conclusion that the officers lacked exigent circumstances to enter Moore's apartment without a warrant because Florida law provides officers with immunity from suit unless the officers "acted in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights,

11

safety, or property." Fla. Stat. § 768.28(9)(a). "Because we may resolve the qualified immunity issue without reaching the merits of the state law claims for [trespass and invasion of privacy], we lack jurisdiction to reach those claims." *Valderrama v. Rousseau*, 780 F.3d 1108, 1111 n.3 (11th Cir. 2015) (internal quotation marks omitted).

## IV.    CONCLUSION

For these reasons, we affirm in part the district court's order denying the officers' motion for summary judgment. We dismiss the officers' appeal of Moore's state law claims for lack of subject matter jurisdiction.

**AFFIRMED IN PART, DISMISSED IN PART.**