956 So.2d 517 (2007)
Justin Chad WHEELER, Appellant,
v.
STATE of Florida, Appellee.
No. 2D05-5493.
District Court of Appeal of Florida, Second District.
May 4, 2007.
Rehearing Denied June 4, 2007.
*518 James Marion Moorman, Public Defender, and Lisa Lott, Assistant Public Defender, Bartow, for Appellant.
Bill McCollum, Attorney General, Tallahassee, and Helene S. Parnes, Assistant Attorney General, Tampa, for Appellee.
DAVIS, Judge.
Justin Chad Wheeler appeals his convictions for trafficking in methamphetamine, possession of oxycodone, possession of marijuana, possession of drug paraphernalia, resisting an officer without violence, and possession of a firearm. Because the trial court erred in denying Wheeler's motion to suppress, we reverse the convictions.
Wheeler moved to suppress the contraband found inside his house, alleging that it was the fruit of an illegal search of his person and his home. The testimony at the suppression hearing disclosed that three Polk County Sheriff's deputies received a dispatch message regarding a battery in progress at a residence in Lakeland. The only information in the dispatch was that a man was battering a female in the driveway of the residence. As the deputies, who were all in separate patrol cars, responded to the call, a second dispatch message was received, advising that the individuals had gone into the house at the designated address. The dispatch did not provide the source of the information or any further description of the persons involved.
Upon arriving at the designated address, two of the deputies approached a male working on a car in the driveway. The man denied knowing anything about the reported battery; however, he indicated that there were persons inside the residence. The third deputy approached the next-door residence, where an unidentified male denied seeing anything related to the alleged battery.
One deputy then remained with the male working on the car while the other two deputies approached the front door of the subject residence. Wheeler answered the door and stepped outside. One deputy advised Wheeler of the sheriff's dispatch and the purpose of their presence. Wheeler *519 denied any knowledge of the alleged incident but did indicate that a female had left. When the deputy asked for Wheeler's name and identification, Wheeler backed up and stepped back inside the residence. The testimony of the deputies conflicted at this point. The deputy who was talking with Wheeler said that Wheeler just backed up without saying anything. Accordingly, the deputy believed that Wheeler was refusing to answer further questions and intended to retreat inside the residence and "slam the door on us." The other deputy testified that Wheeler advised that his identification was inside and that he would retrieve it.
When Wheeler stepped back, the first deputy immediately followed him, grasping him by the arm and placing him in handcuffs. The deputy testified that this occurred inside the residence and that he was detaining Wheeler for "obstructing my investigation." Once he had secured Wheeler, the deputy who was inside the residence observed an ashtray with an object that he recognized as a marijuana bud. He then took Wheeler outside and searched his person, finding a packet of methamphetamine in his pocket.
While the deputy stood with Wheeler outside the house, the other two deputies searched the residence, looking for the female. They did not find anyone in the house but did see evidence of other contraband. After obtaining a search warrant, the deputies searched the home and seized the contraband.
Wheeler argued that the search of his person was performed without probable cause and that the initial search of his home was improper as the deputies did not have a search warrant at that time. He further argued that the subsequently obtained search warrant was invalid because the information that served as the probable cause for the issuance of the warrant had been illegally obtained by the prior warrantless search of the home.
In its written order denying the motionto suppress, the trial court made the following findings of fact: (1) that the deputies were dispatched pursuant to a "911 telephone call reporting domestic violence" and (2) that when Wheeler answered his front door, he stepped outside and closed the door. The trial court also made the following findings:
The defendant subsequently attempted to flee back in the residence and did not cooperate with the officers. The officers fearing that the victim may have been hurt and held against her will inside and that the defendant may have been retreating for a weapon, attempted to stop the defendant. However, they ended up inside the residence. Officers made a sweep of the residence to locate the victim. They observed in plain view drug scales on the kitchen table and discovered an outstanding warrant for the arrest of the defendant. Drugs were found on the defendant. Officers subsequently obtained a search warrant for the residence where drugs, drug paraphernalia, and other drug related items were found.
Based on these facts, the trial court concluded that the deputies had a "reasonable belief" that their search would reveal an injured person and that they had a legal duty to investigate and "locate any injured person." Accordingly, the trial court determined that based on this exigent circumstance, the deputies did not need a search warrant to enter and search Wheeler's home. Furthermore, since the deputies discovered the existence of the outstanding warrant after they entered the *520 residence,[1] the seizure of the contraband was "inevitable" due to Wheeler's arrest on the warrant.
A trial court's ruling on a motion to suppress is a mixed question of law and fact. Seibert v. State, 923 So.2d 460, 468 (Fla.), cert. denied, ___ U.S. ___, 127 S.Ct. 198, 166 L.Ed.2d 162 (2006). The trial court's factual findings must be affirmed if supported by competent, substantial evidence, Caso v. State, 524 So.2d 422 (Fla.1988), while the trial court's application of the law to those facts is reviewed de novo, Ornelas v. United States, 517 U.S. 690, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996). Here, the findings of fact as recited in the trial court's order are supported by competent, substantial evidence, except for two specific findings. First, the determination that the dispatch was based on a 911 call is not supported by the record. There is no testimony in the record as to the nature of the communication with the dispatcher except for a reference by one deputy that "an anonymous caller had called."[2] Similarly, there is nothing in the record to suggest that the call was related to a domestic violence report.[3] Rather, the deputies testified that the report advised of a man beating a woman in front of the residence at the given address.
There are thus two issues before this court: (1) whether these facts provided the deputies with a reasonable basis to believe that an emergency existed that justified their warrantless entry into Wheeler's residence and (2) whether these facts supported application of the inevitable discovery theory.
"A warrantless search of a home is per se unreasonable and thus unconstitutional under the Fourth Amendment." Seibert, 923 So.2d at 468. In fact, the United States Supreme Court has observed that such a search is the chief evil against which the Fourth Amendment is aimed. Payton v. New York, 445 U.S. 573, 585, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980). "At the very core of the Fourth Amendment stands the right of a man to retreat into his own home and there be free from unreasonable governmental intrusion. With few exceptions, the question whether a warrantless search of a home is reasonable and hence constitutional must be answered no." Kyllo v. United States, 533 U.S. 27, 31, 121 S.Ct. 2038, 150 L.Ed.2d 94 *521 (2001) (citation and internal quotation marks omitted).
However, one of the few recognized exceptions to the warrant requirement exists where someone inside the home requires medical aid or assistance. Seibert, 923 So.2d at 468 ("One exception is the presence of an emergency situation which requires the police to assist or render aid."). Under this exception, the police may enter a home without first obtaining a warrant if they have an "objectively reasonable basis . . . to believe that there is an immediate need for police assistance for the protection of life or substantial property interests." Id.
To invoke this exception, the State must rebut the presumption that the search is unreasonable by showing a "`grave emergency' that `makes a warrantless search imperative to the safety of the police and of the community.'" Riggs v. State, 918 So.2d 274, 278 (Fla.2005) (quoting Illinois v. Rodriguez, 497 U.S. 177, 191, 110 S.Ct. 2793, 111 L.Ed.2d 148 (1990)). The Florida Supreme Court in Riggs went on to define "imperative" to mean that the State can show a "`compelling need for official action and no time to secure a warrant.'" 918 So.2d at 279 (quoting Michigan v. Tyler, 436 U.S. 499, 509, 98 S.Ct. 1942, 56 L.Ed.2d 486 (1978)).
Our analysis turns on whether the State was able to demonstrate that the deputies faced a grave emergency that made entry into Wheeler's home imperative. We conclude that the State has not met this burden. First, the record shows that the dispatch consisted of an anonymous report that a male was battering a female in the driveway of the designated residence. It was reasonable for the deputies to infer that the report was made by an eyewitness, especially after the dispatch was later updated to report that the individuals involved had gone inside the residence. However, the report contained no other details. There was no description of either of the persons involved, no description of the nature of the battery, and no indication that anyone appeared injured. Upon arrival, the deputies found nothing to corroborate the report of a battery. They saw no physical evidence indicating a struggle or an injury to a person. No one they spoke with knew anything about the incident. There was nothing suspicious about the residence itself, such as an open door, and the deputies did not determine that there were persons inside the residence who refused to answer the door. Moreover, the deputies did not testify that there was any indication from inside the residence that someone within was in need of their assistance. In fact, the only information that may have corroborated the dispatch was an indication by the male working on the car that there were persons inside the house and Wheeler's acknowledgment, after answering the door, that a female had left.
Not only did the deputies not find anything at the scene to corroborate the anonymous report of a battery, the interviews with persons at the scene indicated that a battery had not taken place.
With nothing more than these facts, we conclude that the deputies did not have a reasonable basis to believe that a grave emergency existed that made it imperative to the safety of the police and community that they enter the home contrary to the requirements of the Fourth Amendment. To affirm on these facts would, in essence, constitute our adoption of a per se exception to the warrant requirement. That is, upon receiving any anonymous call reporting an alleged battery, the police could without any further corroborationmake a warrantless entry into a closed residence without the owner's permission. We find *522 no basis for such a ruling in the law of Florida or in the decisional law of the United States Supreme Court.[4] In fact, the cases in which the courts have found that such an emergency did exist to justify warrantless entry into a private residence all identify something law enforcement observed or learned at the scene that demonstrated the existence of such a grave emergency. See Seibert, 923 So.2d at 469, and cases cited therein. The lack of such additional factual information here leads us to conclude that the trial court erred in denying the motion to suppress based on the existence of an exigent circumstance.
Likewise, we also conclude that the trial court erred in finding that the motion should be denied based on the inevitable discovery theory. Under the inevitable discovery exception to the "fruit of the poisonous tree" doctrine, "`evidence obtained as the result of unconstitutional police procedure may still be admissible provided the evidence would ultimately have been discovered by legal means.'" Fitzpatrick v. State, 900 So.2d 495, 514 (Fla. 2005) (quoting Maulden v. State, 617 So.2d 298, 301 (Fla.1993)).
In the instant case, the evidence ultimately would not have been discovered by legal means because when Wheeler opened the door to his residence and stepped out in response to the deputies' knock on the door, his exchange with the deputies was a citizen encounter, see Popple v. State, 626 So.2d 185 (Fla.1993), which, in the absence of further detail or corroboration, did not provide the deputies with either reasonable suspicion to detain Wheeler, see Florida v. J.L., 529 U.S. 266, 120 S.Ct. 1375, 146 L.Ed.2d 254 (2000), or probable cause to arrest him on the reported battery, see Cunningham v. State, 591 So.2d 1058 (Fla. 2d DCA 1991).
One of the features of a citizen encounter is that the citizen may terminate the conversation at any time. See Parsons v. State, 825 So.2d 406 (Fla. 2d DCA 2002). Since the deputies here did not have the necessary probable cause to arrest Wheeler, nor the reasonable suspicion to detain him, he was free to step back inside his home and close the door at any time. His exercise of this right led one of the deputies to improperly follow him inside and detain him for obstructing the investigation. Everything that occurred after the deputy stepped inside the home became tainted. But for the illegal entry into Wheeler's home, the deputy never would have observed the marijuana bud in plain view and would not have discovered drugs in Wheeler's pocket. More specifically, the deputies would not have determined Wheeler's identity while they were legally within the home. Thus the deputies would not have determined that Wheeler had the outstanding arrest warrant for reckless driving. Accordingly, there is no inevitable discovery involved under these facts, and the trial court erred in denying the motion to suppress on that ground.
Having concluded that the facts of this case failed to provide the deputies with a basis to reasonably believe that exigent circumstances existed to justify the warrantless entry of the home and having determined that had the deputies followed the law of a citizen encounter the inevitable discovery rule would not have been applicable, we conclude that the trial court erred in denying the motion to suppress.
Reversed and remanded.
NORTHCUTT, J., Concurs.
CANADY, J., Dissents.
*523 CANADY, Judge, Dissenting.
Because I conclude that the conduct of the police in responding to the reported emergency was reasonable and that the trial court therefore correctly denied the motion to suppress, I would affirm Wheeler's convictions.
As the majority opinion recounts, the trial court specifically found (a) that the deputies were dispatched "pursuant to a 911 telephone call" and (b) that Wheeler "attempted to flee back in[to] the residence and did not cooperate with the officers." In my view, these crucial findings are supported by the record and together with the other pertinent findings provide an adequate basis for the trial court's denial of the motion to suppress.
I thus disagree with the majority's conclusion that the trial court's "determination that the dispatch was based on a 911 call is not supported by the record." At the suppression hearing, after testimony had been given by one of the deputies concerning the report that the perpetrator had taken the victim of the assault inside the home, defense counsel began the subsequent question to the deputy as follows: "Well, that's what some anonymous caller had told [the] 9-1-1 operator, correct?" Defense counsel finished the question by elaborating on the content of the anonymous call. The deputy then answered, "Correct." Later in questioning the same deputy, defense counsel made reference to "this 9-1-1 call." In its argument to the trial court, the State specifically focused on the circumstance that the deputies were responding to a 911 call. The defense has never assertedeither before the trial court or in this appealthat the basis for the dispatch was anything other than a 911 call.
"[A]ppellate courts [must] accord a presumption of correctness to the trial court's rulings on motions to suppress with regard to the trial court's determination of historical facts." Connor v. State, 803 So.2d 598, 608 (Fla.2001). A "reviewing court is bound by the trial court's factual findings if they are supported by competent, substantial evidence." Pagan v. State, 830 So.2d 792, 806 (Fla.2002). "[T]he reviewing court must interpret the evidence and reasonable inferences and deductions derived therefrom in a manner most favorable to sustaining the trial court's ruling." Id.
Given this standard of review, I would sustain the trial court's finding of historical fact that the deputies were dispatched "pursuant to a 911 telephone call." The testifying deputy's affirmative response to defense counsel's question concerning "what some anonymous caller had told [the] 9-1-1 operator" provided a sufficient basis for the trial court's finding of fact.
In light of the factual context determined to exist by the trial court, I would hold that there was "an objectively reasonable basis . . . for the [police] to believe that there [was] an immediate need for police assistance for the protection of life." Seibert, 923 So.2d at 468. Based on the information provided to them from the 911 calls reporting that an assault was in progress and that the female victim "had been taken inside by [the] male suspect who had been hitting her," the deputies were justified in detaining Wheeler when he proved unwilling to cooperate with their investigation. See United States v. Crapser, 472 F.3d 1141, 1148 (9th Cir.2007) (holding "that when a suspect voluntarily opens the door of his residence in response to a noncoercive [sic] `knock and talk' request, the police may temporarily seize the suspect outside the home (or at the threshold) provided that they have reasonable suspicion of criminal activity"). Wheeler's refusal to cooperate with the deputies provided further objective grounds for a belief *524 by the deputies that evil was afoot, that the victim of the reported assault was in immediate need of assistance, and that entry of the house was necessary to provide that assistance. Given the totality of the circumstances with which they were confronted, the police were justified in concluding that "safety [was] threatened and time [was] of the essence." Riggs, 918 So.2d at 279.
In J.L., 529 U.S. at 273, 120 S.Ct. 1375, although holding that an anonymous tip failed to provide a sufficient basis for an investigatory stop, the Court nonetheless recognized the potential existence of "circumstances under which the danger alleged in an anonymous tip might be so great as to justify a search even without a showing of reliability." In my view, the instant case presents such circumstances.
In United States v. Holloway, 290 F.3d 1331, 1334 (11th Cir.2002), the Eleventh Circuit considered "whether law enforcement officials may conduct a warrantless search of a private residence in response to an emergency situation reported by an anonymous 911 caller." The Holloway court recognized that "911 calls are the predominant means of communicating emergency situations" and that "[i]f law enforcement could not rely on information conveyed by anonymous 911 callers, their ability to respond effectively to emergency situations would be significantly curtailed." Id. at 1339. The court concluded that "when an emergency is reported by an anonymous caller, the need for immediate action may outweigh the need to verify the reliability of the caller." Id.
In Holloway, the court specifically considered circumstances where officers received "a dispatch from a 911 operator relaying [an anonymous] report of gunshots and arguing at [the defendant's] address," followed by a "second dispatch indicating continued gunshots and arguing." Id. at 1338. When the officers arrived at the defendant's dwelling, "nothing at the [scene] dissuaded the officers from believing the veracity of the 911 calls." Id. The court held that the officers acted reasonably in searching the defendant's house: "Under the circumstances known to them at that time, the officers reasonably believed an emergency situation justified a warrantless search of [the defendant's] home for victims of gunfire. The possibility of a gunshot victim lying prostrate in the dwelling created an exigency necessitating immediate search." Id.
Other courts have also held that an anonymous 911 report of a grave threat to safety can provide the basis for the entry of a home, see State v. Torres, 201 Or.App. 275, 118 P.3d 268 (2005); see also People v. DePaula, 179 A.D.2d 424, 579 N.Y.S.2d 10 (N.Y.App.Div.1992); State v. Boggess, 115 Wis.2d 443, 340 N.W.2d 516 (1983); or an investigatory detention, see People v. Dolly, 40 Cal.4th 458, 53 Cal.Rptr.3d 803, 150 P.3d 693 (2007); State v. Prendergast, 103 Hawai'i 451, 83 P.3d 714 (2004); State v. Golotta, 178 N.J. 205, 837 A.2d 359 (2003).[5]
*525 Here, the police had information which they could reasonably credit as a contemporaneous, eyewitness account of events pointing to the existence of a potentially grave threat to the physical safety of the reported victim. When Wheeler refused to cooperate with the investigation undertaken by the deputies, the deputies' reasonable fear for the safety of the reported victim was understandably heightened. The deputies were not constitutionally required to slink away as Wheeler slammed the door in their faces. Based on the historical facts determined by the trial court, I cannot conclude that the deputies at any point acted other than reasonably. As in Holloway, the objectively reasonable prospect of a "victim lying prostrate in the dwelling" justified the warrantless search of the dwelling. 290 F.3d at 1338. I therefore dissent from the majority's conclusion that the deputies violated the Fourth Amendment.
NOTES
[1] The officers determined that there was an outstanding Hillsborough County arrest warrant for Wheeler on a charge of reckless driving.
[2] Upon questioning one of the deputies, Wheeler's trial counsel suggested that the call was an anonymous call placed to the 911 operator; however, that conclusion is not based on any testimony or evidence in this record. This finding is significant only in considering the weight to be given to the "tip." Some courts have determined that a 911 call should be given more credibility than other anonymous calls placed to law enforcement. See United States v. Terry-Crespo, 356 F.3d 1170 (9th Cir.2004). However, these cases do not apply here because the record fails to support the finding that this was a 911 call.
[3] The significance of this finding is minimal. Pursuant to section 901.15, Florida Statutes (2005), an officer may arrest a suspect on a charge of domestic violence battery that is not committed in the officer's presence without a warrant. The officer does not have this right when the charge is simple battery. Also, there is discussion in some courts regarding a "per se" exclusion to the warrant requirement when responding to a call regarding domestic violence. See United States v. Richardson, 208 F.3d 626 (7th Cir.2000). Since the trial court's order does not turn on the officer's authority to arrest Wheeler for suspected domestic violence battery, nor does anyone argue a per se exception, this erroneous finding is of minimal significance.
[4] The Constitution of Florida directs that the Florida courts should follow the decisional law of the United States Supreme Court in interpreting the Fourth Amendment to the Constitution of the United States. See art. I, § 12, Fla. Const.
[5] The Supreme Court of New Jersey stated that "the State stands on firm constitutional ground when it treats the anonymous 9-1-1 caller in the same fashion as it would an identified citizen informant who alerts the police to an emergent situation." Golotta, 837 A.2d at 367. In reaching this conclusion, the court reasoned that "a call placed and processed via the 9-1-1 system carries enhanced reliability not found in other contexts" because under the applicable state law, information concerning the telephone number and location of 911 callers is generally made available to the police. Id. at 366-67. It appears that Florida law is similar to New Jersey law in this respect. See § 365.175, Fla. Stat. (2006); see also § 365.171. The general availability of such information to the authorities, coupled with the risk of prosecution faced by individuals making false 911 reports, bolsters the reliability of 911 reports. See J.L., 529 U.S. at 276, 120 S.Ct. 1375 (Kennedy, J., concurring) (noting that "the ability of the police to trace the identity of anonymous telephone informants may be a factor which lends reliability to what, years earlier, might have been considered unreliable anonymous tips").