BLACK, Circuit Judge:
In this appeal, we consider whether Officer Scott Harrison, who allegedly terminated a high-speed chase by causing David Beshers’ vehicle to crash, violated Beshers’ Fourth Amendment right to be free from unreasonable seizures. We affirm the district court’s grant of summary judgment, having determined that no constitutional violation occurred.
I. BACKGROUND[1]
On the afternoon of April 20, 2002, the City of Toccoa Police received a report from Bev’s Quick Stop that a customer (later identified as Beshers) tried to steal beer after the clerk refused to sell it to him. The customer appeared to be intoxicated and had already been in the store a number of times that day to purchase alcohol. Officer Scott Harrison responded to Bev’s Quick Stop and viewed video surveillance of the suspect’s truck. Shortly after leaving Bev’s, Harrison noticed a truck matching the description of the suspect vehicle at a nearby gas station. Harrison watched the truck turn out of the gas station and run a stop sign as it entered Highway 17-A, a busy four-lane road with shopping centers, fast food restaurants, Wal-Mart, and an occasional hotel on either side. Harrison activated his emergency lights, triggering his video equipment to record, and began to follow the car.
After proceeding a few hundred yards, Beshers pulled into a shopping center and stopped just long enough to let a passenger out of his car. He then drove out of the parking lot and proceeded south on Highway 17-A. Harrison turned on his sirens, called the truck’s license plate into dispatch, and reported that the suspect vehicle was not stopping. Both vehicles accelerated to 55 miles per hour (mph) in the 45 mph zone. As Beshers fled, he wove through traffic, occasionally straddling both southbound lanes.
Corporal Matt Ramey and Officer Linda Addis, were traveling northbound on Highway 17-A when they heard the radio report. According to Addis, Ramey ordered her to perform a roadblock by driving the police vehicle directly in the path of Besh-ers’ oncoming truck. Beshers swerved to avoid the roadblock, crossing the center line and driving into oncoming traffic. Beshers then returned to his proper lane and continued driving south on Highway 17-A. About this same time, Officer John Whitworth joined the pursuit.
Beshers proceeded down Highway 17-A, followed in line by Harrison, Whitworth, and Addis and Ramey. Beshers continued to weave through traffic and force numerous motorists to the side of the road. As he approached the intersection of Highway 17-A and Rose Lane, his lane of travel was blocked by a car stopped at a red light. To avoid stopping, Beshers drove onto the right shoulder of Highway 17-A. As he *1263 pulled alongside the car, the driver-Francis Lyon-turned right onto Rose Lane. The two cars collided. Beshers turned right and accelerated down Rose Lane.
After the collision, Whitworth took the lead pursuit position. Beshers soon turned onto Georgia Highway 145, a narrow, winding two-lane country road with homes on both sides. At this point, Harrison passed Whitworth to regain the lead pursuit position. Beshers continued to improperly pass vehicles by crossing the double center line. He also drove on the wrong side of the road and forced motorists to pull to the side of the road. In this stretch alone, Beshers crossed the center double line at least six times, while maintaining speeds between 55 and 65 mph. After multiple attempts, Harrison passed Beshers. Harrison testified he intended to encourage Beshers to slow down and to warn oncoming traffic.
Almost immediately, Beshers swerved into the northbound lane in an apparent attempt to pass Harrison. Harrison blocked Beshers by swerving in front of him, and Beshers’ truck rammed into the back of the police cruiser.[2] Beshers then swerved back to the southbound lane and Harrison followed. Beshers drove off the road and attempted to pass Harrison on the right shoulder. As Beshers came around the front of the police cruiser and tried to return to the road, the front passenger side of Harrison’s cruiser clipped the rear quarter of Beshers’ truck, causing it to flip several times.[3] Beshers died on impact.[4]
On March 10, 2004, Beshers’ son, Jason Beshers (Appellant) filed suit under 42 U.S.C. § 1983 against the City of Toccoa (City), Toccoa Chief of Police Frank Strickland, and Toccoa Officers Scott Harrison, John Whitworth, Matthew Ramey, and Linda Addis (collectively Defendants), alleging, inter alia, a violation of his Fourth Amendment right to be free from unreasonable searches and seizures.[5] In response, Defendants filed a motion for summary judgment, claiming the individu *1264 al defendants were entitled to qualified immunity. They also argued Appellant could not provide evidence to support a claim for supervisor or municipal liability.
On November 17, 2004, the district court granted the motion for summary judgment as to all Defendants. First, the court determined there was no evidence Officer Harrison intentionally caused his vehicle to collide with Beshers, so no Fourth Amendment seizure occurred. In the alternative, the court concluded that even if a constitutional violation occurred, Harrison would be entitled to qualified immunity because there was no “clearly established” law that would have put Harrison on notice that his conduct violated Beshers’ constitutional rights. See, e.g., Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982) (holding that qualified immunity shields government officials from liability if their acts do not violate “clearly established statutory or constitutional rights of which a reasonable person would have known”). The district court explained that under the then-controlling law of Tennessee v. Garner, 471 U.S. 1, 11-12, 105 S.Ct. 1694, 1701, 85 L.Ed.2d 1 (1985), a police officer could use deadly force to seize a fleeing felony suspect only when the officer (1) “ha[d] probable cause to believe that the suspect pose[d] a threat of serious physical harm, either to the officer or others”; (2) reasonably believed that the use of deadly force was necessary to prevent escape; and (3) gave a warning, if feasible, about the possible use of deadly force. The court found Harrison had probable cause to believe Beshers posed an immediate threat to others because he was driving erratically, was suspected to be intoxicated, and had struck another motorist with his vehicle. The court thus concluded it was not “obvious” that Gar-«.erprohibited the use of deadly force to stop Beshers. The court further found that Appellant failed to identify any “case that demonstrates a clearly established rule prohibiting police officers from engaging in high-speed pursuits or attempting to use a rolling roadblock to slow or stop a fleeing suspect who the officers reasonably suspect poses a danger to others.”[6]
On December 15, 2005, Jason Beshers timely appealed the district court’s grant of summary judgment. After initial briefing and oral argument, the Supreme Court issued Scott v. Harris, — U.S. -, 127 S.Ct. 1769, 1774, 167 L.Ed.2d 686 (2007), which discusses the use of deadly force during a high-speed police pursuit. After analyzing the impact of Harris and carefully reviewing the record, we affirm the district court’s grant of summary judgment and hold that Harrison did not violate Beshers’ Fourth Amendment right to be free from excessive force during a seizure.[7]
*1265 II. DISCUSSION
Appellant argues, inter alia, the district court erred by granting summary judgment in favor of Harrison after (1) finding Beshers was not subject to an unlawful seizure in violation of the Fourth Amendment, and (2) determining that even if a violation occurred, Officer Harrison was nonetheless entitled to qualified immunity. We review the district court’s grant of summary judgment de novo, resolving all genuine disputes of material fact in favor of Beshers. Skrtich v. Thornton, 280 F.3d 1295, 1299 (11th Cir.2002). Summary judgment is appropriate “if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.” Fed. R.Civ.P. 56(c). Harrison’s entitlement to qualified immunity is a question of law to be reviewed de novo. Cagle v. Sutherland, 334 F.3d 980, 985 (11th Cir.2003).
Qualified immunity protects government officials performing discretionary functions from individual liability as long as their conduct “does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.” Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). “The purpose of this immunity is to allow governmental officials to carry out their discretionary duties without the fear of personal liability or harassing litigation, protecting from suit all but the plainly incompetent or one who is knowingly violating the federal law.” Lee v. Ferraro, 284 F.3d 1188, 1194 (11th Cir.2002) (internal quotation marks and citations omitted).
“In resolving questions of qualified immunity, courts are required to resolve a ‘threshold question: Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer’s conduct violated a constitutional right?’” Scott v. Harris, — U.S. -, 127 S.Ct. 1769, 1774, 167 L.Ed.2d 686 (2007) (quoting Saucier v. Katz, 533 U.S. 194, 201, 121 S.Ct. 2151, 2156, 150 L.Ed.2d 272 (2001)). “If, and only if, the court finds a violation of a constitutional right,” does it ask whether the right was clearly established at the time of the violation. Id. We thus turn to the threshold question in this case: whether Officer Harrison violated Beshers’ Fourth Amendment rights.
The Fourth Amendment provides the right to be “free from the use of excessive force in the course of an investigatory stop or other ‘seizure’ of the person.” Kesinger ex rel. Estate of Kesinger v. Herrington, 381 F.3d 1243, 1248 (11th Cir.2004); see also U.S. Const. amend. IV. To establish an excessive force claim, the Appellant must first show Beshers was “seized” within the meaning of the Fourth Amendment. See Vaughan v. Cox, 343 F.3d 1323, 1328 (11th Cir.2003). A Fourth Amendment seizure occurs when “there is a governmental termination of freedom of movement through means intentionally applied.” Brower v. County of Inyo, 489 U.S. 593, 597, 109 S.Ct. 1378, 1381, 103 L.Ed.2d 628 (1989) (emphasis in original).[8] In Brower, the United States Supreme Court explained that if a police cruiser pulls alongside a fleeing car and side *1266 swipes it, thereby producing- a crash, a seizure occurs. Id. at 597, 109 S.Ct. at 1381. But if a suspect in a police chase unexpectedly loses control of his car and crashes, no seizure occurs. Id. This is because the crash was not caused “through means intentionally applied.” Id. (emphasis in original); see also County of Sacramento v. Lewis, 523 U.S. 833, 844, 118 S.Ct. 1708, 1715, 140 L.Ed.2d 1043 (1998) (“[N]o Fourth Amendment seizure would take place where a ‘pursuing police car sought to stop the suspect only by the show of authority represented by flashing lights and continuing pursuit,’ but accidentally stopped the suspect by crashing, into him.”) (quoting Brower, 489 U.S. at 597, 109 S.Ct. at 1381).
Here, Officer Harrison maintains, and the district court agreed, there is no evidence he intentionally caused his vehicle to collide with the decedent. • Nonetheless, viewing the evidence in the light most favorable to the Appellant, we conclude a reasonable juror could determine Harrison intentionally collided with Beshers. Accordingly, for purposes of this appeal only, we operate under the presumption that Harrison “seized” Beshers, as that term is defined under the Fourth Amendment.
We must next decide whether the force used to effectuate the seizure was reasonable. “[A] ‘[s]eizure’ alone is not enough for § 1983 liability; the seizure must be ‘unreasonable.’ ” Brower, 489 U.S. at 599, 109 S.Ct. at 1382-83. “The ‘reasonableness’ inquiry in an excessive force case is an objective one: the question is whether the officer’s actions are ‘objectively reasonable’ in light of the facts and circumstances confronting him, without regard to his underlying intent or motivation.” Kesinger, 381 F.3d at 1248 (citing Graham v. Connor, 490 U.S. 386, 397, 109 S.Ct. 1865, 1872, 104 L.Ed.2d 443 (1989)). “[T]o determine whether the amount of force used by a police officer was proper, a court must ask whether a reasonable officer would believe that this level of force is necessary in the situation at hand.” Ferraro, 284 F.3d at 1197 (internal quotation marks and citations omitted). The inquiry should be viewed from the “perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight” and “must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation.” Connor, 490 U.S. at 396-97, 109 S.Ct. at 1872.
As the district court noted, the Supreme Court found in Tennessee v. Garner that, depending on the circumstances, the use of deadly force to prevent the escape of a felony suspect may or may not be constitutionally reasonable. 471 U.S. at 11, 105 S.Ct. at 1701. The Court explained:
Where the suspect poses no immediate threat to the officer and no threat to others, the harm resulting from failing to apprehend him does not justify the use of deadly force to do so ..... A police officer may not seize an unarmed, nondangerous suspect [with deadly force] ....
... [But] [w]here the officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or others, it is not constitutionally unreasonable to prevent escape by using deadly force. Thus, if the suspect threatens the officer with a weapon or there is probable cause to believe that he has committed a crime involving the infliction or threatened infliction of serious physical harm, deadly force may be used if necessary to prevent escape, and if, where feasible, some warning has been given.
Id. at 11-12, 105 S.Ct. at 1701; see also Brosseau v. Haugen, 543 U.S. 194, 197-98, *1267 125 S.Ct. 596, 598, 160 L.Ed.2d 588 (2004). After Garner, we required three preconditions for the use of deadly force. An officer must: ‘“(1) ha[ve] probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others’ or ‘that he has committed a crime involving the infliction or threatened infliction of serious physical harm;’ (2) reasonably believe[] that the use of deadly force [is] necessary to prevent escape; and (3) ha[ve] given some warning about the possible use of deadly force, if feasible.” Cox, 343 F.3d at 1329-30 (quoting Garner, 471 U.S. at 11-12, 105 S.Ct. at 1701) (emphasis in original).
Recently, however, in Scott v. Harris, the Supreme Court limited Garner’s applicability. — U.S. -, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007). The Court noted that in Garner, they applied the Fourth Amendment’s reasonableness test to a police officer shooting a “young, slight, and unarmed burglary suspect ... in the back of the head while he was running away on foot.” Harris, 127 S.Ct. at 1777 (quoting Garner, 471 U.S. at 4, 21, 105 S.Ct. at 1698, 1706) (internal quotation marks omitted). The Court found that “[w]hatever Garner said about the factors that might have justified shooting the suspect in that case, such ‘preconditions’ have scant applicability” to the reasonableness of the use of deadly force in a high-speed car chase terminated by an intentional collision. Harris, 127 S.Ct. at 1777 (emphasis in original). “A police car’s bumping a fleeing car is, in fact, not much like a policeman’s shooting a gun so as to hit a person[,] [n]or is the threat posed by the flight on foot of an unarmed suspect even remotely comparable to the extreme danger to human life posed by respondent in this case.” Id. (internal quotation marks and citations omitted) (referring to a fleeing motorist driving at high speeds in an effort to elude police). The Court emphasized that “[w]hether or not [the Officer’s] actions constituted application of ‘deadly force,’ all that matters is whether [the Officer’s] actions were reasonable.” Id. at 1778.
The Harris Court reiterated that in determining the reasonableness of a seizure it “must balance the nature and quality of the intrusion on the individual’s Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion.” Id. (quoting United States v. Place, 462 U.S. 696, 703, 103 S.Ct. 2637, 2642, 77 L.Ed.2d 110 (1983)). Thus, in a ramming case, the risk of bodily harm the officer’s actions pose to the suspect must be weighed against the governmental interests of ensuring public safety and eliminating the threat caused by a fleeing suspect. Id. After considering how a court “weights] the perhaps lesser probability of injuring or killing numerous bystanders against the perhaps larger probability of injuring or killing a single person[,]” the Court stated:
We think it appropriate in this process to take into account not only the number of lives at risk, but also their relative culpability. It was [the suspect], after all, who intentionally placed himself and the public in danger by unlawfully engaging in the reckless, high speed flight that ultimately produced the choice between two evils that [the officer] confronted. Multiple police cars, with blue lights flashing and sirens blaring, had been chasing [the suspect] for nearly ten miles, but he ignored their warning to stop. By contrast, those who might have been harmed had [the officer] not taken the action he did were entirely innocent. We have little difficulty in concluding it was reasonable for Scott to take the action that he did.
Id. (footnote omitted).
The Court specifically rejected the notion that police can protect the public by *1268 ceasing a pursuit. Id. at 1779. It explained that calling off a pursuit does not guarantee a suspect will stop driving recklessly and may create “perverse incentives” for individuals to flee and drive recklessly to evade arrest. Id. Instead, it “la[id] down a more sensible rule: A police officer’s attempt to terminate a dangerous high-speed car chase that threatens the lives of innocent bystanders does not violate the Fourth Amendment, even when it places the fleeing motorist at risk of serious injury or death.” Id.
When we apply Harris to the facts of this case, we have no doubt that Harrison’s alleged use of deadly force to stop Beshers did not violate the Fourth Amendment. As we noted above, to determine whether deadly force was reasonable we must determine whether Officer Harrison’s actions were objectively reasonable in light of the facts and circumstances of the pursuit. See Herrington, 381 F.3d at 1248 (citing Connor, 490 U.S. at 397, 109 S.Ct. at 1872). From Harrison’s perspective, he had reason to believe Beshers was a danger to the pursuing officers and others and was driving under the influence of alcohol. Harrison observed Beshers weaving in and out of traffic, crossing the double yellow center line, driving on the wrong side of the road, and forcing others off the road. He witnessed Beshers crash into Ms. Lyon’s vehicle and was rammed several times by Beshers’ truck while traveling between 55 and 65 mph on Highway 145. As in Harris, Beshers “intentionally placed himself and the public in danger by unlawfully engaging in the reckless, high-speed flight.” Harris, 127 S.Ct. at 1778. He ignored the “[m]ultiple police cars, with blue lights flashing and sirens blaring” that had been chasing him for nearly 15 minutes. Id. Based on these circumstances, we conclude that if Harrison intentionally used deadly force to seize Beshers, the use of such force was reasonable.
We therefore hold Harrison did not violate Beshers’. Fourth Amendment right to be free from excessive force during a seizure. Having found no constitutional violation by Harrison, we need not proceed to the second step of the qualified immunity analysis. See Harris, 127 S.Ct. at 1774.
III. CONCLUSION
Based on the foregoing, we affirm the district court’s grant of summary judgment to the Defendants on all of Appellant’s federal law claims.
AFFIRMED.

. We are required to view all facts and draw all reasonable inferences in favor of the non-moving party when reviewing a grant of summary judgment. Brosseau v. Haugen, 543 U.S. 194, 195 n. 2, 125 S.Ct. 596, 597 n. 2, 160 L.Ed.2d 583 (2004). The Supreme Court recognized in Scott v. Harris, - U.S. -, 127 S.Ct. 1769, 1775, 167 L.Ed.2d 686 (2007), that this typically means adopting the plaintiff's version of facts in a qualified immunity case. Nonetheless, in this case, as in Harris, we have the benefit of viewing two videotapes from the patrol cars involved in the pursuit. Thus, to the extent Appellant's version of the facts is clearly contradicted by the videotapes, such that no reasonable jury could believe it, we do not adopt his factual allegations. Id.

. Beshers’ son, Jason Beshers (Appellant), after viewing the videos, alleges the ramming was accidental and occurred because Harrison slammed on his brakes after passing Beshers. We cannot determine from the videotapes whether or not Harrison applied his brakes and caused the ramming.

. A review of the pursuit videotapes shows that a reasonable juror could conclude that either (1) Harrison intentionally pushed Besh-ers off the side of the road and pressed the police cruiser against the rear quarter of Beshers’ truck, or (2) the rear quarter of Beshers’ truck struck the front passenger side of the police cruiser as Beshers tried to pass Harrison. At this stage in the proceedings, we are compelled to view the facts and draw all reasonable inferences in the light most favorable to Beshers. Brosseau v. Haugen, 543 U.S. 194, 195 n. 2, 125 S.Ct. 596, 597 n. 2, 160 L.Ed.2d 583 (2004). Therefore, we will assume Harrison intentionally caused the collision.

. The inquiry in an excessive force case is "whether the officers' actions are 'objectively reasonable’ in light of the facts and circumstances confronting them[.]” Graham v. Connor, 490 U.S. 386, 397, 109 S.Ct. 1865, 1872, 104 L.Ed.2d 443 (1989). Although not relevant to the inquiry, we note that after the accident, the Georgia Highway Patrol Specialized Collision Report Team completed an independent investigation of the crash. The report found that Beshers struck Harrison's patrol car multiple times and that Beshers was "highly intoxicated” at the time of the incident. The Report concluded: “There is no evidence to suggest that there was any intentional act on behalf of the Toccoa Police Officers involved, to do anything other than get an intoxicated driver off the highway by utilizing accepted police methods of dealing with a driver who refuses to yield to a uniformed officer in a marked patrol car.” The Report was attached to Defendants’ motion for summary judgment. Additionally, the City of Toccoa and Chief of Police Strickland investigated the incident and determined that none of the officers violated the Toccoa Standard Operating Procedures.

.Appellant also alleged a violation of Besh-ers’ Fourteenth Amendment right to due process and a number of state law claims that are not before us on appeal.

. The district court also granted summary judgment to the City of Toccoa, Chief of Police Frank Strickland, Corporal Matt Ramey, and Officers John Whitworth and Linda Ad-dis.

. We further conclude the district court did not err by granting summary judgment to the City of Toccoa, Chief of Police Frank Strickland, or Corporal Matt Ramey. We need not address the Appellant’s claims of municipal or supervisory liability since we conclude no constitutional violation occurred. See Rooney v. Watson, 101 F.3d 1378, 1381 n. 2 (finding the plaintiffs could not maintain a failure to train action against the county because the automobile accident did not rise to a level of violating their constitutional rights); Vineyard v. County of Murray, 990 F.2d 1207, 1211 (11th Cir.1993) ("Only when it is clear that a violation of specific rights has occurred can the question of § 1983 municipal liability for the injury arise.”); see also Campbell v. Sikes, 169 F.3d 1353, 1374 (11th Cir.1999) (stating that a claim for supervisory liability fails where there is no underlying constitutional violation). Appellant did not appeal the court's grant of summary judgment to Officers John Whitworth or Linda Addis.

. In Brower, the Court found the decedent was "seized” when the stolen car he was driving crashed into a police roadblock. 489 U.S. at 599, 109 S.Ct. at 1383. The Court reasoned: “it [is] enough for a seizure that a person be stopped by the very instrumentality set in motion or put in place in order to achieve that result .... Brower was meant to be stopped by ... the roadblock—and ... was so stopped.” Id. at 599, 109 S.Ct. at 1382.