[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 07-15763
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
OCT 17, 2008
THOMAS K. KAHN
CLERK

D. C. Docket No. 05-00481-CV-FTM-29-SPC

BONITA ROSA,

Plaintiff-Appellant,

versus

CITY OF FORT MYERS, FL,
FORT MYERS POLICE DEPARTMENT,
DAVID MILLHORN, Officer,
CHRISTOPHER REIMAN, Officer,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

**(October 17, 2008)**

Before CARNES, BARKETT and MARCUS, Circuit Judges.

PER CURIAM:

In this unlawful arrest and excessive force case, Bonita Rosa appeals from

(1) a final judgment entered by the district court in favor of Officer David Millhorn following a jury trial; (2) an order granting summary judgment in favor of the City of Fort Myers (the "City") and Officer Christopher Reiman and granting partial summary judgment in favor of Officer Millhorn; and (3) pre- and post-judgment orders of the district court.

Rosa argues that the district court: (1) erred in denying her motion for judgment as a matter of law ("JMOL") and abused its discretion in denying her motion for a new trial on her excessive force claim against Officer Millhorn;[1] (2) erred in granting summary judgment to the City on the excessive force claim; (3) abused its discretion in denying Rosa's motions for production of documents and for continuance of the trial; (4) erred in granting summary judgment on an illegal arrest claim; and (5) abused its discretion in denying Rosa's motion for a new trial based on defense counsel's improper comments. After careful review, we affirm.

I.

We review <u>de novo</u> the denial of a motion for judgment as a matter of law. <u>See</u> <u>Hessen v. Jaguar Cars, Inc.</u>, 915 F.2d 641, 644 (11th Cir. 1990). In conducting our review, we consider all evidence and inferences drawn therefrom in the light

---

[1] While Rosa uses both phrases "directed verdict" and "judgment as a matter of law," Federal Rule of Civil Procedure 50 has been amended to replace the term "directed verdict" with "judgment as a matter of law." Fed. R. Civ. P. 50 (1991 Amendments).

most favorable to the nonmoving party; the motion should be granted when the evidence presented is so one-sided that reasonable people could not arrive at a contrary verdict. Id. Conversely, if there is substantial evidence opposed to the motion so that reasonable people, in the exercise of impartial judgment, might reach differing conclusions, then the motion should be denied. Id.

We review the denial of a motion for a new trial based on insufficient evidence for abuse of discretion, and will only reverse if the verdict is against the great weight of the evidence. Redd v. City of Phenix City, 934 F.2d 1211, 1214 (11th Cir. 1991). "Because it is critical that a judge does not merely substitute his judgment for that of the jury, 'new trials should not be granted on evidentiary grounds unless, at a minimum, the verdict is against the great -- not merely the greater -- weight of the evidence.'" Lipphardt v. Durango Steakhouse of Brandon, Inc., 267 F.3d 1183, 1186 (11th Cir. 2001) (quotations omitted).

We review de novo a district court's grant of summary judgment, resolving all issues of material fact in favor of the nonmoving party. Davis v. Williams, 451 F.3d 759, 763 (11th Cir. 2006). Finally, we review orders denying a continuance of trial, denying a motion to compel production of evidence, and denying a motion for a new trial on the ground of improper opening or closing arguments by counsel for abuse of discretion. See Holloman v. Mail-Well Corp., 443 F.3d 832, 837 (11th

Cir. 2006) (motion to compel); Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd., 326 F.3d 1333, 1340 (11th Cir. 2003) (motion for continuance); Lanham v. Whitfield, 805 F.2d 970, 972 (11th Cir. 1986) (motion for new trial).

II.

The relevant facts are these. On April 30, 2004, Luis Ochoa, a roommate of Rosa, called 911 for assistance in a "domestic disturbance" between Rosa and her live-in boyfriend Horacio Santana. Ochoa advised that no one was hurt or needing assistance, but that Rosa had "destroyed" Santana's car with a screwdriver, and was trying to hit Santana with the screwdriver. Officers Millhorn and Reiman were dispatched by the City's police department and arrived at the residence. The officers interviewed Ochoa and Santana, arrested Rosa for assault, and transported her to the police station for processing prior to being delivered to the county jail.

During the booking process, Officer Millhorn attempted to remove Rosa's necklace. The parties dispute what happened next. Rosa testified at trial that she told Officer Millhorn that she did not want to be touched by him, and a female officer, Officer Nattiel-Brown, began to help Rosa take off her jewelry. According to Rosa, Officer Millhorn then told her that if she didn't remove her jewelry he would "break her arm," and touched her neck in the process of reaching for one of

4

the necklaces, when Rosa again instructed that he not touch her. At this point, says Rosa, Officer Millhorn grabbed her right arm and broke it with a loud "pop."

Officer Millhorn, on the other hand, testified that he did not threaten to break Rosa's arm. He admitted that he had touched her to assist in taking off the jewelry, but said that Rosa had elbowed him when he did so. He further testified that he had grabbed her arm and put it in an arm bar hold because she had hit him and he was concerned she might strike him again. He also acknowledged that the hold was intended only to control her and not to result in a broken arm. Officer Nattiel-Brown testified that she had not heard Officer Millhorn threaten Rosa, and that Officer Millhorn used the arm bar hold when it appeared to her that Rosa was going to strike him. In addition, several officers, including Officer Nattiel-Brown, testified that they had used arm bar holds in the past without ever breaking an arm, and that the hold was designed to restrain and not injure.

A surveillance camera at the police station recorded the incident, but does not provide the necessary angle or clarity to resolve exactly what occurred. As Rosa concedes, however, the video shows Officer Millhorn moving backward just before he applied the arm bar hold to Rosa. However, a contemporary incident report bearing Officer Nattiel-Brown's name did not state that Rosa struck Officer Millhorn prior to the arm bar hold.

5

Following Rosa's injury, Officer Millhorn called for an ambulance to respond to the police station. Thereafter Rosa was given a chair and seated until the EMTs arrived at the holding area and transported Rosa, along with Officer Millhorn, to the hospital. After receiving medical treatment, Rosa was booked into the Lee County Jail, but the State Attorney's office ultimately dismissed the case.

III.

Turning to Rosa's appeal, we first reject her claims that the district court erred in denying her motion for JMOL, and abused its discretion in denying her motion for a new trial on the excessive force claim against Officer Millhorn. The Fourth Amendment provides the right to be "free from the use of excessive force in the course of an investigatory stop or other 'seizure' of the person." Beshers v. Harrison, 495 F.3d 1260, 1265 (11th Cir. 2007) (quotations omitted).[2] To establish an excessive force claim, a plaintiff must show that her seizure was unreasonable. Id. at 1266. "The 'reasonableness' inquiry in an excessive force case is an objective one: the question is whether the officer's actions are 'objectively reasonable' in light of the facts and circumstances confronting him, without regard to his underlying intent or motivation." Id. (quotations omitted). Factors to be considered include "the severity of the crime at issue, whether the suspect poses an

_____

[2] The district court also analyzed Rosa's claim under the Fourteenth Amendment, but Rosa does not appear to raise the Fourteenth Amendment on appeal.

immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Graham v. Connor, 490 U.S. 386, 396 (1989). Moreover, the inquiry is viewed from the "perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight" and "must embody allowance for the fact that police officers are often forced to make split-second judgments -- in circumstances that are tense, uncertain, and rapidly evolving -- about the amount of force that is necessary in a particular situation." Beshers, 495 F.3d at 1266 (quotations omitted).

The record here reveals that Officers Millhorn and Nattiel-Brown testified before the jury that Rosa had elbowed, and again attempted to strike, Officer Millhorn immediately prior to the arm bar hold. They also heard Officer Millhorn testify that he chose to use the arm bar hold on Rosa because "it was the least . . . physical maneuver" he could use to restrain her. And although Rosa put forth testimony that arm bar holds did not usually result in broken arms, the jury did not, for example, hear testimony that Officer Millhorn used more force in the arm bar hold he applied on Rosa than he had used in other similar situations. After considering all of the evidence, the jury was free to conclude that Officer Millhorn did not use excessive force in the arm bar hold he applied on Rosa -- especially since Officer Millhorn was making a "split-second judgment" about the amount of

7

force to use on an individual who was attempting to strike him. Because we cannot say that "the verdict is against the great . . . weight of the evidence," Lipphardt, 267 F.3d at 1186, the district court committed no error, nor abuse of discretion, in denying Rosa's motions for judgment as a matter of law and for a new trial.

Nor can we conclude that the district court abused its discretion in denying Rosa's motion for a new trial on her free speech retaliation claim. To state a claim for retaliation for exercising First Amendment rights, a plaintiff must establish that: (1) the speech or act was constitutionally protected; (2) the defendant's retaliatory conduct adversely affected the protected speech; and (3) a causal connection existed between the retaliatory conduct and the adverse effect on speech. Bennett v. Hendrix, 423 F.3d 1247, 1250 (11th Cir. 2005). The jury easily could have found no causal connection between Millhorn's arm bar hold and her comments, based on the testimony of Officers Millhorn and Nattiel-Brown that Rosa elbowed him and attempted to strike him again immediately before the action in question. Cf. Hankins v. AirTran Airways, Inc., 237 Fed. App'x 513, 521 (11th Cir. 2007) (unpublished opinion) (rejecting a employment discrimination retaliation claim where an "intervening act of misconduct . . . severed the causal connection (if any) between [plaintiff's] initial complaint of discrimination and [defendant's] decision to terminate her employment").

8

Next, we find no merit to Rosa's argument that the district erred in granting summary judgment to the City on the excessive force claim. Because, as we have concluded, the jury properly found that Officer Millhorn did not use excessive force on Rosa, the City cannot be liable for damages arising from an excessive force claim. See City of Los Angeles v. Heller, 475 U.S. 796, 799 (1986) (holding that an award of damages against a municipal corporation based on actions of one of its police officers is not authorized when jury has concluded that officer inflicted no constitutional harm).[3]

We, likewise, are unpersuaded that the district court erred in granting summary judgment on the illegal arrest claim. "A warrantless arrest without probable cause violates the Fourth Amendment . . . ." Ortega v. Christian, 85 F.3d 1521, 1525 (11th Cir. 1996). Probable cause exists when "the facts and circumstances within the officers' knowledge, of which he or she has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed, is committing, or is about to

---

[3] By the same token, we reject Rosa's claim that the district court abused its discretion in denying Rosa's motions for production of documents and for continuance of the trial. Both motions involved documents related to the City's liability -- i.e., excessive force complaints lodged against the entire FMPD -- and as the district court's order noted, were filed after summary judgment was granted in favor of the City, and just four days before trial was to begin. Given the broad discretion we accord district courts "to ensure that their cases move to a reasonably timely and orderly conclusion," Chrysler Int'l Corp. v. Chemaly, 280 F.3d 1358 (11th Cir. 2002), we cannot say that the district court abused this discretion.

9

commit an offense." Jordan v. Mosley, 487 F.3d 1350, 1355 (11th Cir. 2007) (quotations omitted).

Here, Rosa was arrested for domestic violence which includes "any assault, . . . battery, . . . or any criminal offense resulting in physical injury . . . of one family or household member by another family or household member." Fla. Stat. § 741.28(2). A misdemeanor assault is "an intentional, unlawful threat by word or act to do violence to the person of another, coupled with an apparent ability to do so, and in doing some act which creates a well-founded fear in such other person that such violence is imminent." Knight v. Jacobson, 300 F.3d 1272, 1275 (11th Cir. 2002) (quoting Fla. Stat. § 784.011). A battery is the actual and intentional touching or striking of another person against their will, or intentional bodily harm of another. Fla. Stat. § 784.03(1)(a). A substantial certainty of a touching or striking satisfies the intent element of battery. S.D. v. State, 882 So. 2d 447, 449 (Fla. 4th Dist. Ct. App. 2004).

As the deposition testimony shows, Ochoa reported to the 911 dispatcher that Rosa had tried to attack Santana with a screwdriver, and Santana told the officers at the scene that Rosa had "advanced" at him with a screwdriver in her hand, and had thrown the screwdriver at him. The actions are more than sufficient to constitute battery, see Fla. Stat. § 784.03(1)(a), assault, see Fla. Stat. §

10

784.011(1), and domestic violence, see Fla. Stat. § 741.28(2). Notably, the domestic violence statute does not require physical injury or death, R.H. v. State, 709 So. 2d 129, 130 (Fla. 4th Dist. Ct. App. 1998), an officer may arrest a suspect without a warrant on a charge of domestic violence battery that is not committed in the officer's presence, see Fla. Stat. § 901.15(7); Wheeler v. State, 956 So. 2d 517, 520 n.3 (Fla. 2d Dist. Ct. App. 2007), and the decision to arrest does not require the consent of the victim, see Fla. Stat. § 741.29(3). Moreover, the officers' report of the incident here expressly noted "D.V." (for domestic violence) and "domestic dispute." Thus, as the district court held, the facts known to the officers at the time of Rosa's arrest provided ample probable cause to arrest her for domestic violence. Accordingly, neither the officers nor the City could be liable for illegal arrest, see Heller, 475 U.S. at 799, and the district court did not err in granting summary judgment in favor of the officers and the City on this claim.

Finally, we are unpersuaded by Rosa's argument that the district court abused its discretion in denying Rosa's motion for a new trial based on defense counsel's improper comments during opening and closing argument. As we have made clear, a district court has wide discretion to regulate the scope of counsel's arguments. Goldsmith v. Bagby Elevator Co., 513 F.3d 1261, 1282 (11th Cir. 2008). "Statements made in oral arguments must be plainly unwarranted and

11

clearly injurious to constitute reversible error." Peterson v. Willie, 81 F.3d 1033, 1036 (11th Cir. 1996). Having thoroughly reviewed the record, we agree with the district court that all of the comments -- most of which were challenged after-the-fact, and not objected to contemporaneously[4] -- either were not prohibited by the district court's prior rulings, were a fair response to statements by plaintiff's counsel, were based on evidence that was in fact introduced on the record, or were cured by the district court's jury instructions. The district court did not abuse its discretion in denying Rosa's motion for a new trial on these grounds.

Accordingly, we affirm.

**AFFIRMED.**

---

[4] In the absence of a contemporaneous objection, we review the district court's failure to correct an improper closing argument for plain error. See Brough v. Imperial Sterling Ltd., 297 F.3d 1172, 1178 (11th Cir. 2002) (appellate court applying plain error review to counsel's closing argument to determine if the district court erred in denying a motion for new trial where the motion was based on argument to which there was no objection during trial).